## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| PPM TECHNOLOGIES HOLDING, INC., ) | Case Nos. 10-14788 and 10-14795 |
| *et al.*,[1] ) | |
| ) | The Honorable Jack B. Schmetterer |
| Debtors. ) | |
| ) | **Hearing Date: April 29, 2010, at 10:00 a.m.** |

### <u>NOTICE OF EMERGENCY MOTION</u>

PLEASE TAKE NOTICE that on **April 29, 2010, at 10:00 a.m.**, or a soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Judge Jack B. Schmetterer, Courtroom 682, United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, and present the **EMERGENCY MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE, (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT,** a copy of which is attached hereto and hereby served upon you.

Dated: Chicago, Illinois
      April 26, 2010

By:        */s/ Nancy A. Peterman*
      Nancy A. Peterman, ARDC 6208120
      Sean W. Bezark, ARDC No. 6203767
      GREENBERG TRAURIG, LLP
      77 W. Wacker Drive, Suite 3100
      Chicago, Illinois 60601
      Phone: 312.456.8400
      Fax: 312.456.8435
      petermann@gtlaw.com
      bezarks@gtlaw.com

      *Proposed counsel to the Debtors and*
      *Debtors-In-Possession*

---

[1]     The Debtors in these chapter 11 cases are: PPM Technologies Holding, Inc. and PPM Technologies, Inc.

## CERTIFICATE OF SERVICE

I, Nancy A. Peterman, an attorney, hereby certify that on April 24, 2010, I caused a complete and accurate copy of the **EMERGENCY MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE, (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT** to be served via this Court's ECF notification system and/or facsimile, as indicated, upon each of the parties identified on the Service Lists below my electronic signature.

*/s/ Nancy A. Peterman*

## ECF NOTICE LIST

Ernesto D Borges on behalf of Debtor PPM Technologies Holding, Inc.
aferreria@billbusters.com, BillBusters@BestClientInc.com

John K Lyons on behalf of Interested Party Calliope Capital Corporation
jlyonsch@skadden.com, mmirkovi@skadden.com

Michael L Molinaro on behalf of Creditor Aurora Management Partners, Inc.
mmolinaro@loeb.com, chdocket@loeb.com;mjawor@loeb.com

William T Neary
USTPRegion11.ES.ECF@usdoj.gov

Nancy A Peterman on behalf of Debtor PPM Technologies Holding, Inc.
petermann@gtlaw.com, carlsonk@gtlaw.com; greenbergc@gtlaw.com

Karen J Porter on behalf of Debtor PPM Technologies Holding, Inc.
kjplawnet@aol.com, kjplawnet@aol.com

## FACSIMILE SERVICE LIST

William T Neary
Office of the U.S. Trustee, Region 11
219 S Dearborn St. Room 873
Chicago, IL 60604
Phone: 312-886-5785
Fax: (312) 886-5794

Ernesto D Borges
Law Offices of Ernesto Borges
105 W Madison Street, 23rd Floor
Chicago, IL 60602
Phone: 312 853-0200
Fax: 312-853-3130
Email: aferreria@billbusters.com

John K. Lyons, Esq.
Matthew N. Kriegel
Skadden Arps Slate Meagher & Flom LLP
155 N. Wacker Drive
Chicago, IL 60606
Phone: 312-407-0700
Fax: 312.407.0411

Stuart Komrower, Esq.
Cole Schotz, Meisel, Forman & Leonard, P.A.
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Phone: 201-489-3000
Fax: 201-489-1536
skomrower@coleschotz.com

David M. Bass, Esq.
Cole Schotz, Meisel, Forman & Leonard, P.A.
900 Third Avenue, 16th Floor
New York, New York 10022-4728
Phone: 212-752-8000
Fax: 212-752-8393

Michael L. Molinaro, Esq.
Theresa L. Davis, Esq.
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
Phone: 312-464-3100
Fax: 312.464.3111

Jean R. Robertson, Esq.
Tiiara Patton, Esq.
Calfee, Halter & Griswold LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, OH 44114
Phone: 216-622-8400
Fax: 216-241-0816
jrobertson@calfee.com
*Counsel for Shearer Foods*

Glenda Gray, Esq.
Arrim Johnson
330 N. Wabash Ave., Suite 2618
Chicago, IL 60611
Phone: 312-755-1010
Fax: 312-755-1020

PPM Lender Group
c/o Brune & Richard, LLP
80 Broad Street, 30th Floor
New York, New York 10004
Phone: 212-668–1900 phone
Fax: 212-668–0315

Karen J Porter
Porter Law Network
230 West Monroe, Suite 240
Chicago, IL 60606
Fax : 312-372-4160
Email: kjplawnet@aol.com

Arira Pangindo
Jl Sukaraja 51
Ciluar Bogor 16710
Phone: +62-0251-7127261
Fax: +62-0251-658377

FMC Technologies, Inc - Tupelo
Material Handling Solutions
2730 Highway 145 South
Saltillo, MS 38866
Phone: 662-869-7424
Fax: 662-869-5711
mhsol.info@fmcti.com

IEA Inc
c/o Town Center Bank
10735 NE Halsey
Portland, OR 97220
Phone: 503-542-3720
Fax: 503-542-3724

IMCO Inc
15812 N.E. 10th Street
Ridgefield, WA 98642
Phone: 360-694-7121
Fax: 360-694-7144


Infor Global Solutions
World Headquarters
13560 Morris Road, Suite 4100
Alpharetta, GA 30004
Phone: 678-319-8000
Fax: 678-319-8370
sales@infor.com

Ishida Co Ltd.
1-5201 Itbashi, Itabashi-Ku
Tokyo 1730004
Phone: +81-75-771-4141
Fax: +81-75-751-1634

Jerry Allen Rich
15569 Village Park Court
Lake Oswego, OR 97034
Fax: (503)699-7462

Kerry Sweet Ingredients
113 South Brook Way
Mankato, MN 56001
Phone: 952-448-6188
Fax: 877-793-3970

Kuehne & Nagel, Inc
5353 W. Imperial Highway
Los Angeles, CA 90045-6243
Phone: 310-641-5500
Fax: 310-645-2320

Motion Industries, fka
Mill Supply Corp.
2375 Mcgilchrist St. SE
Salem, OR 97309
Phone: 503-585-7411
Fax: 503-581-4894

Pepsico Financial Shared Services
7701 Legacy Drive
Plano, TX 75024-4099
Centralized Collections for PepsiCo:
Phone: 972-334-7111
Fax: 972-767-3670

Pepsi-Qtg Canada
34 Hunter Street West
555 W Monroe
Chicago, IL 60661
Centralized Collections for PepsiCo:
Phone: 972-334-7111
Fax: 972-767-3670

Seneca Foods Corp
Green Giant Division
101 W 8th Street
Glencoe, MN 55336
Phone: 315-926-8100
Fax: 315-926-8300

Snack Alliance
78035 @ Hwy 207
Buttercreek Hwy (Hwy207)
Hermiston, OR 97838
Phone: 800-665-3880
Fax: 604-654-8448

Specialty Fabrication & Manufacturing LLC
500 E Illinois St
Newberg, OR 97132
Phone: 505-823-1832
Fax: 505-823-0186

Sunshine Produce
No 18 Wei 7 Road
Micro Electronics Industrial Park Jingang
Xiqing District Tianjin 300385
Phone: 0086 22 2801 5122
Fax: 0086 22 2328 8022 or 0086 22 2328 5599
info@sunshineproduce.com

The Selinsky Force, LLC
4244 Mt. Pleasant, Ste. 100
N. Canton, OH  44720
Phone: 330-477-4527
Fax:
(No answer/phone out of business)

Tooh Dineh Industries Inc
PO Box 62434
Phoenix, AZ 85082-2434
Phone: 505-823-1832
Fax: 505-823-0186

## UTILITY COMPANY SERVICE LIST
### SERVED VIA FACSIMILE

AT&T
Bankruptcy Department
5407 Andrews Highway
Midland, TX  79706
Fax: 866-425-9278

City of Newberg
PO Box 970
Newberg, OR 97132
Fax: 503-537-1277

City of Newberg
PO Box 970
Newberg, OR 97132
Fax: 503-537-1277

Comcast
PO Box 34744
Seattle, WA 98124-1744
Fax: 206-684-0911

Freewire Broadband
7327SW Barnes Rd #702
Portland, OR 97225
Fax: 503-614-8283

Newberg Garbage
PO Box 1000
Newberg, OR 97132
Fax: 503-538-1383

Northwest Natural Gas
PO Box 8905
Portland, OR 97255-001
Fax: 503-273-4824

Portland General Electric
PO Box 4438
Portland, OR 97208-4438
Fax: 503-464-2676

Portland General Electric
PO Box 4438
Portland, OR 97208-4438
Fax: 503-464-2676

Verizon
Attn: Sharon West, Recovery Department
1515 Woodfield Road, Suite 1400
Schaumburg, IL 60173
Phone: 847-619-5066
Fax: 847-706-7487

Virtual Armor
PO Box 18435
Boulder, CO 80308
Fax: 720-528-7919

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PPM TECHNOLOGIES HOLDINGS, | ) | Case Nos. 10-14788 and 10-14795 |
| INC., et al. | ) | (Jointly Administered) |
| | ) | |
| Debtors.[2] | ) | Hon. Jack B. Schmetterer |
| | ) | |
| | ) | **Hearing Date: April 29, 2010, at 10:00 a.m** |
| | ) | |

**EMERGENCY MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL
ORDERS PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY
CODE (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR
DISCONTINUING SERVICE, (II) DEEMING UTILITIES ADEQUATELY
ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING
PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

The above-captioned debtors and debtors-in-possession (the "**Debtors**") hereby submit

this emergency motion (the "**Motion**") for entry of interim and final orders (collectively, the

"**Procedures Order**") pursuant to sections 105(a) and 366 of title 11 of the United States Code,

11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"): (a) prohibiting their Utility Providers (as

defined below) from altering, refusing, or discontinuing service; (b) deeming Utility Providers

adequately assured of future performance; and (c) establishing procedures for determining

adequate assurance of payment.  In addition, the Debtors request that the Court set a final hearing

(the "**Final Hearing**") on the Debtors' proposed adequate assurance procedures.  In support of

this Motion, the Debtors respectfully state as follows:

---

[2] The Debtors in these cases are PPM Technologies Holdings, Inc. d/b/a PPM Global Corporation and PPM
Technologies Inc.

**Background**

**A.    The Chapter 11 Cases**

1.    On April 3, 2010 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On April 16, 2010, the Court entered an order directing the joint administration of the Debtors' chapter 11 cases (the "**Cases**") [Docket No. 37].

2.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

3.    The statutory predicates for the relief sought herein are sections 105(a) and 366(a) of the Bankruptcy Code.

**B.    Background and Operations**

4.    The Debtors are privately held Illinois companies engaged in the business of developing and supplying products to the food processing and packaging industry.

5.    On January 15, 2010, Calliope Capital Corporation, Valens U.S. SPV I, LLC, Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., and LV Administrative Services (together, the "**Lenders**"), the Debtors' pre-petition secured lenders, commenced a state court action against the Debtors, certain non-debtor foreign affiliates, and the Debtors' former chief executive officer, Leroy Wright, in the Supreme Court of the State of New York alleging various causes of action.

6.    Following the Petition Date, on April 13, 2010, the Lenders filed a *Motion to Appoint Trustee* (the "**Trustee Motion**") in the Cases requesting, among other things, that Debtors' chief executive officer Leroy Wright be replaced with a chapter 11 trustee based, in part, on the allegations of fraud being pursued in the state court action [Docket No. 22].  On the same date, Leroy J. Wright commenced a voluntary petition for relief under chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. Wright's chapter 11 case is currently being administered under Case Number 10-16221.

7.      In settlement of the Trustee Motion, the Debtors, Lenders and Leroy Wright agreed to an arrangement whereby Leroy Wright would be removed as an employee, director and officer of the Debtors, including as the chief executive officer of the Debtors' estates, and replaced with a chief restructuring officer to be appointed by the Court to administer the Debtors' estates.  On April 21, 2010, the Court entered the *Interim Consent Order Confirming the Employment of Mr. John L. Palmer as the Debtors' Chief Restructuring Officer and Implementing Relief Related Thereto* (the "**Interim Consent Order**"), pursuant to which  John Palmer is appointed as Chief Restructuring Officer of the Debtors with complete managerial authority to take all actions believed to be in the best interests of the Debtors and their estates.

## C.   <u>Utility Providers</u>

8.      In connection with the operation of their businesses and management of their estates, the Debtors obtain electricity, gas, water, sewer services, telephone services, and/or other similar services (collectively, the "**Utility Services**") from a number of utility companies (collectively, the "**Utility Providers**"), including those listed on **<u>Exhibit "A"</u>** attached hereto (the "**Utility Provider List**")[3].

9.      In the ordinary course of business, the Debtors regularly incur utility expenses for water, electricity, gas, telephone service, and internet service provided by various Utility Providers.  The Debtors' aggregate average monthly cost for utility services is approximately $20,968.

---

[3] The inclusion of any entity on, as well as any omission of any entity from, **<u>Exhibit "A"</u>** is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect thereto.

10.     Uninterrupted utility services are essential to the preservation of the Debtors' estates and assets, and therefore, to the success of these Cases.  Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' ability to preserve and maximize the value of their respective estates could be severely and irreparably harmed.  Specifically, lack of electricity and phone service would render the Debtors' burglar and fire alarm systems, which are necessary to maintain insurance coverage, inoperable.  In addition,  the lack of electricity would cause a shut-down of certain of the Debtors' equipment which would destroy inventory and result in a loss of significant value for all creditor-constituencies with respect to such inventory.  Finally, the loss of electricity may cause malfunction to the Debtors' computer systems which are required for the operation of the Debtors' businesses.  It is therefore critical that utility services continue uninterrupted.

11.     The Debtors seek the relief requested herein for all their Utility Providers providing Utility Services to the Debtors, including but not limited to those listed on **Exhibit "A"**.  The Debtors reserve the right to supplement **Exhibit "A"** by filing a notice (a "**Supplemental Notice**") at a later date with the Court.

### Relief Requested

12.     By this Motion, pursuant to sections 105(a) and 366 of the Bankruptcy Code, the Debtors seek entry of (i) an Interim Order and (ii) a Final Order:

(A)     determining that their Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code;

(B)     approving the Debtors' proposed offer of adequate assurance and procedures governing Utility Providers' requests for additional or different adequate assurance;

(C)     prohibiting the Utility Providers from altering, refusing, or discontinuing services on account of pre-petition amounts

outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance;

(D)     establishing procedures for the Utility Providers to seek to opt out of the Debtors' proposed adequate assurance procedures; and

(E)     determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion.

## A.     Adequate Assurance

13.     Generally, section 366(a) of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing service to a debtor for the first twenty (20) days of a bankruptcy case. However, pursuant to section 366(c)(2) of the Bankruptcy Code, in a chapter 11 context, a utility provider may refuse or discontinue service to a debtor only after the first thirty (30) days if the debtor has not furnished the utility provider with adequate assurance of future payment. Furthermore, upon expiration of such period, a utility provider cannot terminate its services if a debtor has furnished "adequate assurance of payment" within the meaning of section 366(c)(1)(A) of the Bankruptcy Code.

14.     In light of the severe consequences to the Debtors of any interruption in services by the Utility Providers, but recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance (as defined below) on a case-by-case basis, the Debtors propose that the Procedures Order approve and adopt the Adequate Assurance Procedures (as defined below).

15.     The Debtors intend to pay all post-petition obligations and expect that revenues generated from their business operations and debtor-in-possession financing, if approved by this Court, will be sufficient to pay all undisputed post-petition obligations owed to the Utilities in a timely manner.  However, to provide adequate assurance of payment for future services to the Utilities as set forth in section 366(c) of the Bankruptcy Code, the Debtors propose to deposit an

initial sum equal to the Debtors' estimated average cost for two (2) weeks of Utility Services (the "**Adequate Assurance Deposit**"), into a segregated account (the "**Adequate Assurance Account**") as soon as practicable after the date hereof, and after interim approval of debtor-in-possession financing, pending further order of this Court.  Because the Debtors' approximate two-week spending on Utility Services is approximately $10,484, the Adequate Assurance Deposit will be approximately $10,484.

16.    The Debtors further propose to maintain the Adequate Assurance Account with a minimum balance equal to the Debtors' estimated average two-week cost of Utility Services through the Final Hearing on the Motion.  Thereafter, the Debtors propose to adjust the amount in the Adequate Assurance Account to reflect the following factors: (i) the termination of Utility Services by the Debtors regardless of any Additional Assurance Requests (as defined below), and (ii) agreements with the Utility Providers.  These adjustments will permit the Debtors to maintain the Adequate Assurance Account with an amount that consistently provides the Utility Providers that do not otherwise hold deposits or security for their Utility Services with a two-week deposit on account of such services.

17.    The Debtors submit that the Adequate Assurance Deposit, taken together with the facts and circumstances of the Debtors' chapter 11 Cases (together, the "**Proposed Adequate Assurance**"), constitutes sufficient adequate assurance to the Utility Providers.  Moreover, the Debtors are seeking approval of debtor-in-possession financing and use of cash collateral that the Debtors believe will provided more than adequate liquidity to meet their cash needs during these Cases.

18.    As a result, the Debtors are objectively very likely to continue paying, and be able to continue paying, their obligations to the Utility Providers post-petition.

19.      These protections ensure that all Utility Providers will have adequate assurance of payment throughout these Cases, and the Debtors believe that no other or further assurance is necessary.  However, if any Utility Provider believes adequate assurance is required beyond the protections described herein, it must request such assurance pursuant to the procedures described below (the "**Adequate Assurance Procedures**"):

A.      As adequate assurance of future payment to the Utility Providers, Debtors propose to deposit an initial sum equal to the Debtors' estimated average cost for two (2) weeks of Utility Services into the Adequate Assurance Account as soon as practicable after the date hereof and after approval of debtor-in-possession financing by this Court, pending further order of this Court.   The Debtors estimate the aggregate amount of all Adequate Assurance Deposits will not exceed $10,484;

B.      If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtors, the Utility Provider must serve a written request (the "**Additional Assurance Request**") upon the Debtors, setting forth the locations(s) for which Utility Services are provided, the account number(s) for such locations(s), the outstanding balance for each account, a summary of the Debtors' payment history on each account, and an explanation of why the Adequate Assurance Deposit is inadequate assurance of payment;

C.      The Additional Assurance Request must actually be filed with the Court and received by (i) the Debtors, PPM Technologies Holdings, Inc. and PPM Technologies, Inc., 500 E. Illinois Street, Newburg, Oregon 97132 (Attn: John L. Palmer, Chief Restructuring Officer), (ii) the Debtors' counsel, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attn: Nancy A. Peterman, Esquire and Sean W. Bezark, Esquire) and Greenberg Traurig, LLP, MetLife Building, 200 Park Avenue, New York, NY 10166 (Attn: Maria J. DiConza, Esquire), and (ii) the Lenders' counsel, Skadden, Arps, Slate Meagher & Flom, 155 North Wacker Drive, Chicago, Illinois, 60606 (Attn: John K. Lyons, Esquire) and Cole, Schotz, Meisel, Forman, and Leonard, P.A., Court Plaza North, 25 Main Street, Hackensack, New Jersey, 07602 (Attn: Stuart Komrower, Esquire) (collectively, the "**Notice Parties**"), so as to be **actually received** by such Notice Parties within twenty (20) days of entry of the Procedures Order;

D.      In the event that the Debtors receive any Additional Assurance Request in compliance with the procedures in the Motion, the Debtors shall have five (5) business days (collectively, the "**Resolution Period**") to negotiate with the Utility Provider to endeavor to resolve that Utility Provider's request for additional assurance of payment; and that during this period, Utility

Providers may not terminate any of the services they provide to the Debtors on account of the bankruptcy filing or any unpaid charges for pre-petition services;

E.    The Debtors may, in their discretion, resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, in their discretion, provide a Utility Provider with additional adequate assurance of future payment including, but not limited to, cash deposits, prepayments, and/or other forms of security, without further order of this Court, if the Debtors believe such additional assurance is reasonable;

F.    If the Debtors determine that an Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code;

G.    Pending resolution of any such Determination Hearing, such particular Utility Provider shall be restrained from discontinuing, altering, or refusing service to the Debtors on account of unpaid charges for pre-petition services or the Debtors' bankruptcy filing;

H.    A Utility Provider shall be deemed to have adequate assurance of payment unless and until (a) the Debtors, in their sole discretion, agree to an Additional Assurance Request or agree to an alternative assurance of payment with the Utility Provider during the Resolution Period, or (b) this Court enters an order requiring that additional adequate assurance of payment be provided;

I.    Any Utility Provider that fails to make an Additional Assurance Request shall be deemed to be satisfied that the Adequate Assurance Deposit provided to it supplies adequate assurance of payment; and

J.    At any time, the Debtors may terminate service from any of the Utility Providers, such termination being effective immediately upon Debtors' notice to the Utility Provider.  At such time, Debtors shall no longer be required to make any more payments to such Utility Provider for any services provided after such termination, and any excess shall be returned forthwith.

**B.    Subsequent Modifications of Utility Provider List**

20.    Although the Debtors have made a good-faith effort to identify all the Utility Providers, certain Utility Providers that currently provide Utility Services to the Debtors may not

be listed on **Exhibit "A"**.  To the extent that the Debtors identify additional Utility Providers, the

Debtors will file a supplemental notice (the "**Supplemental Notice**") and will serve the Interim

Order or the Final Order, as applicable, and the Supplemental Notice on all Utility Providers

listed in such Supplemental Notice.  The Debtors request that the Interim Order and the Final

Order be binding on all Utilities, including any Utility Provider set forth on any Supplemental

Notice; provided, however, that any party included on a Supplemental Notice shall be provided

twenty (20) days from the date of service of any Supplemental Notice to object to its inclusion in

the Interim Order and the Final Order.  If an objection is received within such twenty (20) day

period, a hearing shall be heard on such objection at the next regularly scheduled hearing date, or

on such date as mutually agreed to by the parties.

21.    Nothing in the Interim Order or the Final Order will constitute a finding that any

entity is or is not a Utility Provider under section 366 of the Bankruptcy Code, whether or not

such entity is included in the Utilities List.

## Basis for Relief Requested

22.    Congress enacted section 366 of the Bankruptcy Code to protect debtors from

utility service cutoffs upon a bankruptcy filing while, at the same time, to provide utility

companies with adequate assurance that debtors will pay for post-petition services.  *See* H.R.

REP. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306.  Accordingly,

section 366 protects debtors by enjoining utilities from altering, refusing, or discontinuing

services solely on account of unpaid pre-petition amounts for a period of thirty (30) days after

the bankruptcy filing, and it protects utilities by permitting them to alter, refuse, or discontinue

service after thirty (30) days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility. 11 U.S.C. § 366.[4]

23.    Section 366(c), which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, significantly modified the existing statutory framework. It has two primary purposes: first, it permits a utility to alter, refuse, or discontinue utility service if a debtor has not provided "satisfactory" adequate assurance within thirty (30) days of its bankruptcy filing, subject to the court's ability to modify the amount of adequate assurance.  It also restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate.  Specifically, courts may no longer consider (a) the absence of a security deposit before the debtor's petition date, (b) the debtor's history of timely payments, or (c) the availability of an administrative expense priority when determining the amount of a deposit.  Notwithstanding these noteworthy changes, it does not appear that Congress intended to - or did - abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

24.    First, while section 366(c) does limit the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate

---

[4] Section 366 of the Bankruptcy Code applies to entities that are traditionally viewed as utilities, such as those that provide electricity, telephone service or water, and to any entity that supplies services that cannot be readily obtained or replaced elsewhere, or which constitutes a monopoly with respect to the services that it provides to the debtor.  *See, e.g., One Stop Realtour Place, Inc. v. Allegiance Telecom of Pennsylvania, Inc. (In re One Stop Realtour Place, Inc.)*, 268 B.R. 430, 436-37 (Bankr. E.D. Pa. 2001) (provider of telephone service is a utility regardless of whether telephone service may be available from another provider); *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986) (landlord of the Brooklyn Navy Yard "occupies 'a special position with respect to the debtor in its rose as the [debtor's] utility supplier").  Despite the wide latitude afforded in determining those entities that constitute utilities under section 366, some of the companies listed in **Exhibit "A"** may also provide good or services to the Debtors in a capacity other than that of a utility.  With respect to any such goods or services, such companies are not entitled to adequate assurance under section 366.  Moreover, the Debtors are not foreclosed from taking the position that any of the entities listed on **Exhibit "A"** are not utilities within the meaning of section 366.

assurance.  Instead, section 366(c) gives courts the same discretion in determining the amount of

payment necessary for adequate assurance as they previously had under section 366(b).

*Compare* 11 U.S.C. § 366(b) (2005) ("On request of a party-in-interest and after notice and a

hearing, the court may order reasonable modification of the amount of the deposit or other

security necessary to provide adequate assurance") *with* 11 U.S.C. § 366(c)(3)(A) (2005) ("On

request of a party-in-interest and after notice and a hearing, the court may order modification of

the amount of an assurance payment under paragraph (2)").  Section 366(b) permits a court to

find that no adequate assurance payment at all is necessary to provide a utility with adequate

assurance of payment under certain circumstances.  *See In re Caldor*, 117 F.3d 646, 650 (2d Cir.

1997) ("Even assuming that 'other security' should be interpreted narrowly, a bankruptcy court's

authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b)

includes the power to require 'no deposit or other security' where none is necessary to provide a

utility supplier with 'adequate assurance of payment'").  This may be particularly true in cases

where the debtor has made pre-petition deposits or prepayments for services that utilities will

ultimately render post-petition.  *See* 11 U.S.C. § 366(c)(I)(A)(v) (recognizing a prepayment for

post-petition services as adequate assurance).  Accordingly, courts continue to have discretion to

determine the amount of adequate assurance payments and, where appropriate, to determine that

no such payment is necessary.

25.    Additionally, section 366(c), like section 366(b), simply requires that a utility's

assurance of payment be "adequate."  Courts have long recognized that adequate assurance of

performance does not constitute an absolute guarantee of a debtor's ability to pay.  *See In re

Caldor*, 199 B.R. 1, 3 (S.D.N.Y. 1996) (Section 366(b) "does not require an 'absolute guarantee

of payment"); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In

determining adequate assurance, a bankruptcy court is not required to give a utility company the

equivalent of a guaranty of payment"); *In re Steinebach*, 303 B.R 634, 641 (Bankr. D. Ariz.

2004) ("Adequate assurance of payment is not, however, absolute assurance . . . all § 366(b)

requires is that a utility receive only such assurance of payment as is necessary to protect its

interests given the facts of the debtor's financial circumstances"). Courts have also recognized

that in determining the amount of adequate assurance, bankruptcy courts should focus "on the

need of the utility for assurance, and to require that the debtor supply *no more than that*, since

the debtor almost perforce has a conflicting need to conserve scarce financial resources." *In re

Caldor*, 117 F.3d at 650 (emphasis in original); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d

100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were

necessary where such deposits would likely "jeopardize the continuing operating of the [debtor]

merely to give further security to suppliers who are already reasonably protected"). 

Accordingly, demands by a utility for a guarantee of payment when they already have adequate

assurance of payment in light of the Debtors' specific circumstances should be refused.

26.    Based upon the foregoing, the Debtors believe that the proposed Adequate

Assurance Deposits are sufficient adequate assurance of payment within the meaning of section

366 of the Bankruptcy Code. The proposed Adequate Assurance Deposits are cash deposits, a

listed form of assurance of payment in section 366(c)(1)(A)(i) of the Bankruptcy Code. The

Debtors are also seeking approval of debtor-in-possession financing and use of cash collateral,

which enables them to pay their operating costs, including utility costs, as they come due. The

Debtors' ability to access post-petition financing, together with the pre-petition lenders' consent

to the use of cash collateral in the amounts set forth in any Approved Budget for debtor-in-

possession financing and use of cash collateral pursuant to the consent of the Debtors' secured

lenders and separate Order of the Court, will provide them with more than sufficient funds to pay

operating costs, including the Utility Services.  Moreover, the Debtors have a powerful incentive

to stay current on their utility obligations because of their significant reliance on utility services

to maintain their business operations.  These factors - which the Court should consider when

considering the amount of any adequate assurance payments - justify a finding that the Proposed

Adequate Assurance is more than sufficient to assure the Utility Providers of future payment.

27.    If the Utility Providers disagree with the Debtors' analysis, however, the

procedures proposed in this Motion will enable the parties to negotiate and, if necessary, seek

Court intervention without jeopardizing the Debtors' chapter 11 Cases, while still protecting the

rights of the Utility Providers under section 366 of the Bankruptcy Code.

28.    The Court has authority to approve the proposed procedures under section 105(a)

of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that the Court "may

issue any order, process or judgment that is necessary or appropriate to carry out the provisions

of this title."  The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy

courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of

their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-5 to 105-6 (15th ed. rev. 2001).

29.    The proposed procedures set forth a fair process that will enable all parties to

negotiate their respective positions and, where necessary, seek Court intervention without

jeopardizing the Debtors' chapter 11 Cases, while preserving the Utility Provider's rights under

section 366 of the Bankruptcy Code.  In fact, this Court and other courts have approved similar

procedures in other chapter 11 cases filed after the 2005 amendments to the Bankruptcy Code

became effective.  *See, e.g., In re Rockford Prods. Corp.*, No. 07-71768 (Bankr. N.D. Ill. Sept. 7,

2007) (payment of 50% of monthly utility service constituted adequate assurance); *In re Enesco*

*Group, Inc.*, No. 07-00565 (Bankr. N.D. Ill. Feb. 7, 2007) (same); *In re Aventine Renewable Energy Holdings, Inc.*, Case No. 09-11214 (KG) (Bankr. D. Del. May 4, 2009) (deeming utilities adequately assured where the debtors established segregated account containing an amount equal 50% of the debtors' estimated monthly cost of utility service); *In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC) (Bankr. D. Del. Apr. 24, 2007) (deeming utilities adequately assured where debtor provided two-weeks deposit for utilities); *In re Global Home Products LLC*, No. 06-10340 (KG) (Bankr. D. Del. May 4, 2006) (deeming utilities adequately assured where the debtors established segregated account containing an amount equal 50% of the debtors' estimated monthly cost of utility service).   Accordingly, the Debtors believe that the proposed procedures should be approved.

### Notice

30.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee for the Northern District of Illinois; (b) the Debtors' pre-petition secured lenders; (c) creditors holding the twenty (20) largest unsecured claims; (d) the Utility Providers and (e) those persons filing notices of appearance and requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure in these chapter 11 cases.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

31.     No previous application for the relief sought herein has been made to this or any

other court.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order

granting the relief requested herein and that it grant such other and further relief as is just and

proper.

Dated: Chicago, Illinois
        April 26, 2010

By:    _/s/ Nancy A. Peterman_____
Nancy A. Peterman (ARDC 6208120)
Sean W. Bezark (ARDC 6203767)
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Phone: 312.456.8400
Fax: 312.456.8435
petermann@gtlaw.com
bezarks@gtlaw.com

## <u>Exhibit "A"</u>

### List of Utility Providers

| Provider Name | Description | Address | Fax |
|---|---|---|---|
| AT&T | Dallas phone & fax forwarding service | AT&T Bankruptcy Department 5407 Andrews Highway Midland, TX  79706 | 866-425-9278 |
| AT&T | Company cell phone plan | AT&T Bankruptcy Department 5407 Andrews Highway Midland, TX  79706 | 866-425-9278 |
| City of Newberg | Main water meter | PO Box 970 Newberg, OR 97132 | 503-537-1277 |
| City of Newberg | Shop water meter | PO Box 970 Newberg, OR 97132 | 503-537-1277 |
| Comcast | High speed internet | PO Box 34744 Seattle, WA 98124-1744 | 206-684-0911 |
| Freewire Broadband | Broadband service | 7327SW Barnes Rd #702 Portland, OR 97225 | 503-614-8283 |
| Newberg Garbage | Monthly garbage service | PO Box 1000 Newberg, OR 97132 | 503-538-1383 |
| Northwest Natural Gas | Monthly gas bill | PO Box 8905 Portland, OR 97255-001 | 503-273-4824 |
| Portland General Electric | Monthly electricity | PO Box 4438 Portland, OR 97208-4438 | 503-464-2676 |
| Portland General Electric | Monthly electricity | PO Box 4438 Portland, OR 97208-4438 | 503-464-2676 |
| Verizon | General phone line, fire system, main circuit | PO Box 9688 Mission Hills, CA 91346-9688 | 847-706-7487 |
| Verizon | Long distance phone, old MCI line | PO Box 371322 Pittsburgh, PA 15250-7322 | 847-706-7487 |
| Verizon | Homer City phone | Sharon West Recovery Department 1515 Woodfield Road, Suite 1400 Schaumburg, IL 60173 | 847-706-7487 |
| Virtual Armor | Internet security | PO Box 18435 Boulder, CO 80308 | 1-720-528-7919 |