IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Case Nos. 10-14788 and 10-14795 |
|  | ) |
|  | ) Chapter 11 |
| PPM TECHNOLOGIES HOLDINGS, INC. | ) |
| d/b/a PPM Global Corporation, *et al.* | ) (Jointly Administered) |
|  | ) |
| Debtors. | ) Hon. Jack B. Schmetterer |
|  | ) |

**INTERIM ORDER (I) AUTHORIZING (A) SECURED POST-
PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
AND 364(c) AND (d); (B) GRANTING SECURITY INTERESTS,
SUPERPRIORITY CLAIMS AND ADEQUATE PROTECTION; AND
(C) USE OF CASH COLLATERAL AND (II) SCHEDULING A FINAL
HEARING PURSUANT TO BANKRUPTCY RULE 4001(c)**

Upon the emergency motion (the "Motion") dated April ___, 2010, of PPM Technologies

Holdings, Inc. ("Holdings") and PPM Technologies, Inc. ("PPM"), the above-captioned debtors,

each in their capacity as Debtors in possession (collectively, the "Debtors"), (a) requesting entry

of an order authorizing the Debtors pursuant to Sections 363(c), 364(c) and 364(d) of Title 11 of

the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and

Rules 2002, 4001(c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Local Rule 4001-2, inter alia, (i)  to obtain post-petition financing (the

"Post-Petition Financing") pursuant to the terms of the DIP Loan Documents (as defined below)

from Valens U.S. SPV I, LLC ("Valens U.S.") and/or the successors, participants and assigns of

and with Valens U.S., all of which shall  hereinafter collectively be referred to as, the "DIP

Lender"),[1] (ii) to grant the DIP Lender, pursuant to Bankruptcy Code §§ 364(c) and 364(d), first

---

[1] Calliope Capital Corporation ("Calliope"), Valens Offshore SPV I, Ltd. ("Valens Offshore I"), Valens
Offshore SPV II Corp. ("Valens Offshore II") and Valens U.S. are affiliates of the Debtors' predecessor pre-petition
senior secured lender, Laurus Master Fund Ltd. (In Liquidation) ("Laurus"), and are assignees of Laurus
(continued…)

priority and junior security interests in all of the Debtors' currently owned and after-acquired

property to secure the Debtors' obligations under the Post-Petition Financing; and (iii) to grant

the DIP Lender priority in payment with respect to the obligations incurred in connection with

the Post-Petition Financing over any and all administrative expenses of the kinds specified in

Bankruptcy Code §§ 503(b) and 507(b), other than as described below; (b) seeking this Court's

authorization to use the Pre-Petition Lenders' cash collateral within the meaning of Bankruptcy

Code § 363(a) (the "Cash Collateral"), pursuant to Bankruptcy Code § 363(c) and to provide

adequate protection, pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d); (c) seeking a

preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of an interim

order pursuant to Bankruptcy Rule 4001 (the "Order") authorizing the Debtors to borrow under

the Post-Petition Financing the amounts set forth in and limited by the Approved Budget (as

defined below) upon the terms and conditions set forth in this Order pending the Final Hearing

referred to below; and (d) requesting that a final hearing (i.e., the Final Hearing as defined in

paragraph 26 below) be scheduled by this Court to consider entry of a final order (the "Final

Order") authorizing on a final basis, inter alia, the Post-Petition Financing and use of the Cash

Collateral; and due and sufficient notice of the Motion under the circumstances having been

given; and the Preliminary Hearing on the Motion having been held before this Court in

accordance with the Rule 4001(c)(2) of the Bankruptcy Rules; and upon the entire record made

at the Preliminary Hearing; and this Court having found good and sufficient cause appearing

therefor;

---

(…continued)

with respect to the Pre-Petition Loan Documents (as defined below).  The foregoing entities, collectively, and
together with each of Laurus' affiliates, successors, agents or assignees to whom Laurus has assigned or may assign
certain or all of its rights, shall be hereinafter collectively referred to as the "Pre-Petition Lenders".

IT IS HEREBY FOUND:

A.      On April 3, 2010 (the "Petition Date"), each of the Debtors filed  voluntary

petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11

Cases").  Each of the Debtors are continuing in possession of its property, and operating and

managing its business, as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy

Code.

B.      On April 21, 2010, the Court entered an Interim Order Confirming the

Appointment of Mr. John L. Palmer as the Debtors' Chief Restructuring Officer and

Implementing Relief Related Thereto (the "CRO Appointment Order"), pursuant to which Mr.

Palmer's pre-petition appointment as Chief Restructuring Officer (the "CRO") for each of the

Debtors was confirmed.

C.      This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to

28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as

defined in 28 U.S.C. § 157(b)(2).

D.      The Pre-Petition Lenders, the Debtors, and certain affiliates of the Debtors (to the

extent applicable), are parties to, or have an interest in, one or more of the following documents,

as amended, modified and/or supplemented from time to time (collectively the "Pre-Petition

Loan Documents")[2]: (i) Amended and Restated Secured Term Note issued on or about April 30,

2008, from Holdings and PPM to Valens U.S. in the principal amount of $845,823.08 (the

"Secured Term Note I"); (ii) Amended and Restated Secured Term Note, issued on or about

April 30, 2008, from Holdings and PPM to Valens Offshore I in the principal amount of

---

[2] Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the
meanings given in the Pre-Petition Loan Documents.

$3,737,511.90 (the "Secured Term Note II"); (iii) Secured Tranche B Term Note, issued on or

about April 30, 2008, from Holdings and PPM to Valens Offshore II in the principal amount of

$8.8 million (the "Secured Tranch B Term Note"); (iv) Amended and Restated Secured

Revolving Note (the "Revolving Note"), issued on or about April 30, 2008, from Holdings and

PPM to Calliope in the amount of $3 million; (v) Secured Revolving Note, issued on or about

April 30, 2008, from Heavens Knows Limited and Wright Machinery, Inc. in the amount of $3

million issued to Calliope;(vi) Amended and Restated Security Agreement dated April 30, 2008,

among LV Administrative Services, Inc., as administrative and collateral agent, the Lenders from

time to time a party thereto, Holdings, PPM and Foodtech, LLC (the "Amended and Restated

Security Agreement"); (vii) Security Agreement dated April 30, 2008, among LV Administrative

Services, Inc., as administrative and collateral agent, the Lenders from time to time a party

thereto, Heavens Knows Limited and Wright Machinery, Inc. (the "Security Agreement" and

together with the Amended and Restated Security Agreement, the "Security Agreements";(viii)

Stock Pledge Agreement dated as of July 30, 2007, between Holdings, as Pledgor and Calliope,

as Pledgee; (ix) Stock Pledge Agreement dated as of July 30, 2007, between Holdings, as

Pledgor and Calliope, as Pledgee, in respect of shares in Potato Processing Machinery AB; (x)

Stock Pledge Agreement dated as of April 30, 2008, between Holdings, as Pledgor and LV

Administrative Services, Inc., as administrative and collateral agent; (xi) Stock Pledge

Agreement dated as of April 30, 2008, between Heavens Knows Limited and Wright Machinery,

Inc., as Pledgor and LV Administrative Services, Inc., as administrative and collateral agent;(xii)

Overadvance Side Letter dated as of June 30, 2009, among LV Administrative Services, Inc., as

agent, Valens U.S., Valens Offshore I, Valens Offshore II, Holdings, PPM and PPM

Management, LLC (f/k/a Foodtech, LLC); (xiii) Overadvance Side Letter dated as of June 30,

2009, among LV Administrative Services, Inc., as agent, Valens U.S., Heavens Knows Limited,

Wright Machinery Limited and Wright Machinery, Inc.;(xiv) Amended and Restated Common

Stock Purchase Warrant A, Issue Date July 30, 2007, Amended and Restated Date as of April 30,

2008, from Holdings to Calliope; (xv) Amended and Restated Common Stock Purchase Warrant

B, Issue Date July 30, 2007, Amended and Restated Date as of April 30, 2008, from Holdings to

Calliope; (xvi) Amended and Restated Common Stock Purchase Warrant C, Issue Date July 30,

2007, Amended and Restated Date as of April 30, 2008, from Holdings to Calliope; (xvii)

Amended and Restated Common Stock Purchase Warrant D, Issue Date January 29, 2008,

Amended and Restated Date as of April 30, 2008, from Holdings to Valens U.S.; (xviii)

Amended and Restated Common Stock Purchase Warrant E, Issue Date January 29, 2008,

Amended and Restated Date as of April 30, 2008, from Holdings to Valens Offshore I; (xix)

Common Stock Purchase Warrant F-1, Issue Date April 30, 2008, from Holdings to Calliope;

and Common Stock Purchase Warrant F-2, Issue Date April 30, 2008, from Holdings to Valens

Offshore II, together with all related and ancillary documents executed in connection with the

foregoing.

      E.     The Debtors (through the CRO) admit, and this Court finds, in each case subject

to entry of a Final Order, the Debtors' Review Period (as defined herein) and the rights of the

Committee (as defined herein) and any other party in interest set forth in paragraphs 22 and 24 of

this Order, that all obligations of the Debtors to the Pre-Petition Lenders of any kind or nature

under the Pre-Petition Loan Documents are secured by a first priority blanket security interest

(the "Pre-Petition Liens") in the "Collateral," which is defined in the Security Agreements to

include "all of each Company's property and assets, whether real or personal, tangible or

intangible and whether now owned or hereafter acquired …" and the proceeds and products of

all of the foregoing as more particularly described in the Pre-Petition Loan Documents (all such

Collateral is hereafter referred to as the "Pre-Petition Collateral").  The Pre-Petition Collateral

includes "all Deposit Accounts, other bank accounts and all funds on deposit therein," as well as

"all money, cash and cash equivalents," of the Debtors.

       F.       The Debtors (through the CRO) admit, and this Court finds, in each case subject

to entry of a Final Order, the Debtors' Review Period and the rights of the Committee and any

other party in interest set forth in paragraphs 22 and 24 of this Order, that each of the Debtors are

truly and justly indebted to the Pre-Petition Lenders under those Pre-Petition Loan Documents to

which the Debtors are a party or obligor, without defense, counterclaim or offset of any kind, and

that as of April 3, 2010, such liability to the Pre-Petition Lenders was, including interest, fees

and other charges (including default fees and the acceleration/default payment), unpaid thereon

in the aggregate amount of approximately (but not less than) $15,005,232.48 (plus attorneys'

fees, costs, expenses, and fees) (the "Pre-Petition Indebtedness") and that no portion of the Pre-

Petition Indebtedness is subject to avoidance, recharacterization, recovery or subordination

pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  As of the Petition Date, but

subject to the Debtors' Review Period (and the rights of the Committee and any other party in

interest set forth in paragraphs 22 and 24 of this Order), the Debtors, through the CRO, in

consideration of the Post-Petition Financing to be made available under the terms of this Order

and the Final Order, waive and release any and all causes of action and claims, defenses and

setoff rights against the Pre-Petition Lenders and their respective affiliates agents,

representatives, employees (including Scott Bluestein, Dhamendra Lachman and Fareesa

Yahaya), assigns and successors, including all claims asserted or which could have been asserted

by the Debtors in the action, *PPM Global Corporation, et al. v. LV Administrative Services, Inc.,*

*et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Case No. 10-cv-01794.

G.    The Debtors (through the CRO) admit, and this Court finds, in each case subject to entry of a Final Order, the Debtors' Review Period and the rights of the Committee and any other party in interest set forth in paragraphs 22 and 24 of this Order, that by reason of the Pre-Petition Loan Documents, (i) the Pre-Petition Indebtedness is secured by valid, properly perfected, enforceable and non-avoidable liens and security interests granted by the Debtors to the Pre-Petition Lenders upon and in all of the Pre-Petition Collateral, (ii) the liens held by the Pre-Petition Lenders securing the Pre-Petition Indebtedness are senior to all other security interests in the Pre-Petition Collateral subject only to any Permitted Liens (as defined in paragraph 7(b) below) and (iii) the liens and security interests granted by the Debtors to the Pre-Petition Lenders upon and in all of the Pre-Petition Collateral are not subject to avoidance, recharacterization or subordination in any way.

H.    The Debtors are unable to operate by using only Cash Collateral and are unable to provide the Pre-Petition Lenders with adequate protection for the use of Cash Collateral. Moreover, the Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense.  Financing on a post-petition basis is not otherwise available without the Debtors granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in §§ 503(b) and 507(b) of the Bankruptcy Code and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to §§ 364(c) and 364(d) of the Bankruptcy Code.

I.      Notice of the Preliminary Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the twenty (20) largest unsecured claims against the Debtors; and (iii) known holders of pre-petition liens against the Debtors' property.  No official committee of unsecured creditors (the "Committee") has as yet been appointed in either of the Chapter 11 Cases.

J.      Based on the record presented to this Court by the Debtors, through the CRO, it appears that the Post-Petition Financing and use of Cash Collateral have been negotiated in good faith and at arm's-length among the Debtors, through the CRO, and the Pre-Petition Lenders and the DIP Lender, and any credit extended and loans made to the Debtors by the DIP Lender pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Section 364(e) of the Bankruptcy Code and the DIP Lender shall have all of the protections thereunder.

K.      Based on the record before this Court, it appears that the terms of this Order, including, without limitation, the terms of the Post-Petition Financing and use of Cash Collateral, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and is supported by reasonably equivalent value and fair consideration.

L.      The Debtors, through the CRO, have requested immediate entry of this Order. The permission granted herein to use Cash Collateral and obtain the Post-Petition Financing and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the flow of goods, supplies

and services to the Debtors necessary to sustain the Debtors' business operations and enhance the

Debtors' prospects for a successful asset sale and completion of the Chapter 11 Cases.

Based upon the foregoing findings and conclusions, and upon the record made before this

Court at the Preliminary Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1. <u>Motion Granted</u>.  The Motion is granted, on the terms and conditions set forth in

this Order.

2. <u>Authorization</u>.  The Debtors are expressly authorized and empowered to (a)

whether or not within the "Formula Amount," as that term is defined in the Amended And

Restated Security Agreement, obtain the Post-Petition Financing, use Cash Collateral, and

perform all obligations strictly pursuant to the provisions of this Order; (b) perform all

obligations under the Pre-Petition Loan Documents as such documents are, or may be, amended

and modified pursuant to the terms of this Order, other than (i) any obligations to make any

prepayments except as otherwise required by this Order, (ii) any obligation to pay any

overadvance interest, as that term is defined in Section 5(b)(ii) of the Amended And Restated

Security Agreement (the "<u>Overadvance Fees</u>") or any "Default Payments," as that term is

defined in the Pre-Petition Documents (collectively, the "<u>Default Payments</u>"), without waiving

the rights of the Pre-Petition Lenders to subsequently recover thereupon; or (iii) any obligation to

comply with the reporting requirements contained in Section 11 of the Amended And Restated

Security Agreement or the financial covenants contained in Section 13(x) of the Amended And

Restated Security Agreement, which reporting requirements are superseded by the provisions of

this Order; and (c) enter into such other agreements, instruments and documents as may be

necessary or required to evidence the obligations to the DIP Lender and the Pre-Petition Lenders,

to consummate the terms and provisions of the Motion and this Order and to evidence perfection

of the liens and security interests to be given to the DIP Lender and the Pre-Petition Lenders in

this Order (the Pre-Petition Loan Documents as modified by this Order shall hereinafter be

referred to as the "DIP Loan Documents").  The DIP Lender's advances of the Post-Petition

Financing shall be pursuant to the same terms as the Pre-Petition Loan Documents, as modified

by this Order, without the need for further execution or documentation, and all advances by the

DIP Lender shall be deemed made consistent with the terms of the Revolving Note and limited

by the Security Agreements.  The borrowing(s) made on or after the Petition Date under the

credit facility maintained under the DIP Loan Documents (the "DIP Facility") and all other

indebtedness and obligations incurred on or after the Petition Date with respect to loans,

advances and any other indebtedness or obligations, contingent or absolute, pursuant to this

Order and the DIP Loan Documents which may now or from time to time hereafter be owing by

the Debtors to the DIP Lender (including principal, accrued and unpaid interest, and fees costs

and expenses, including without limitation attorneys' fees and expenses) are referred to herein as

the "DIP Indebtedness," and, together with the Pre-Petition Indebtedness, as the "Indebtedness."

The Debtors and the DIP Lender may enter into nonmaterial amendments of or modifications to

the DIP Loan Documents without the need of further notice and hearing or order of this Court.

     3.     <u>Borrowing; Use Cash Collateral and Continuation of the Debtors' Accounts</u>.

Subject to any Approved Budget (as defined in paragraph 17 below) and solely in compliance

therewith and subject further to the terms and conditions of this Order and the DIP Loan

Documents, (a) the Pre-Petition Lenders hereby consent to the Debtors' limited use of Cash

Collateral, and (b) the DIP Lender will provide the DIP Facility, on a revolving basis, in

accordance with the terms of the DIP Loan Documents, <u>provided</u>, <u>however</u>, that the Debtors may

be permitted an overadvance, as applicable, under the DIP Loan Documents in the amounts set

forth in an Approved Budget.  The Debtors shall continue to use their pre-Petition Date bank

accounts and cash management system, including the requirement that all collections be remitted

to the lockbox in accordance with the Pre-Petition Loan Documents, and the DIP Lender shall be

deemed a party to the pre-petition lock box arrangements between the Debtors and the Pre-

Petition Lenders.

4.    <u>Application of Proceeds.</u>

(a)    Subject to the entry of a Final Order, proceeds or payments received by

the Pre-Petition Lenders and/or the DIP Lender with respect to the Pre-Petition Collateral and

DIP Facility Collateral (as defined in paragraph 7 below) shall be applied as follows: (i) first, to

the Pre-Petition Indebtedness consisting of accrued and accruing interest, fees, costs and

expenses; (ii) next, to the Pre-Petition Indebtedness consisting of principal; and (iii) next, to the

outstanding balance of the DIP Facility, the first of which to all accrued and accruing interest,

fees, costs and expenses, and then to principal.

(b)    Subject to the entry of the Final Order, the automatic stay under Section

362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to

permit the Pre-Petition Lenders to retrieve, collect and apply payments and proceeds in respect

of the Pre-Petition Collateral and the DIP Facility Collateral (defined in paragraph 7 below) in

accordance with the terms and provisions of this Order and the DIP Loan Documents.

(c)    Subject to the entry of the Final Order, neither the Debtors nor any other

party, including the CRO, shall have the right to direct or seek an order directing the manner of

application of any payments to the DIP Lender or the Pre-Petition Lenders or any other receipts

by the DIP Lender or the Pre-Petition Lenders of proceeds of any of the Pre-Petition Collateral or

DIP Facility Collateral (defined in paragraph 7 below) other than in the manner set forth in this

Order and the Pre-Petition Loan Documents and the DIP Loan Documents.

     5.    <u>Interest, Fees, Costs and Expenses</u>.  Subject to (a) Sections 3.2 and 4.10 of the

Secured Term Note I, (b) Sections 3.2 and 4.10 of the Secured Term Note II, (c) Sections 3.2 and

4.10 of the Secured Tranche B Term Note; and (d) Sections 2.2 and 3.10 of the Revolving Note,

as applicable, the Pre-Petition Indebtedness shall bear interest from and after the Petition Date at

the applicable Contract Rate (as defined in and set forth in Section 1.1 of the respective Notes).

The DIP Indebtedness shall bear interest at the non-default rate set forth in the Pre-Petition Loan

Documents.  The DIP Lender and the Pre-Petition Lenders shall be entitled to recover all of their

reasonable attorneys' fees and other professional fees as well as all costs and expenses incurred

in connection with the Indebtedness and this proceeding, other than any Overadvance Fees or

any Default Payments, without waiving the rights of the Pre-Petition Lenders to subsequently

recover thereupon.  In consideration for providing the DIP Facility, the DIP Lender shall be paid

all fees specified in the DIP Loan Documents in accordance with the terms therein for such

payment.

     6.    <u>Termination of the DIP Facility and Use of Cash Collateral</u>.

     (a)    The DIP Lender's agreement to provide the DIP Facility in accordance

with the DIP Loan Documents and the Pre-Petition Lenders' consent to the use of the Cash

Collateral shall immediately and automatically terminate (except as the DIP Lender and/or the

Pre-Petition Lenders may otherwise agree in writing in their sole discretion), and all

Indebtedness shall be immediately due and payable in cash upon the earliest to occur of any of

the following (each, a "<u>Termination Event</u>" and the date upon which a Termination Event occurs,

the "<u>Termination Date</u>"):

(1)     if a Final Order in form and of a content acceptable to the DIP Lender in its sole and absolute discretion has not been entered within one (1) Business Day following the date of the Final Hearing;

(2)     the date of final indefeasible payment and satisfaction in full in cash of the Indebtedness;

(3)     the effective date of any confirmed plan in either of the Chapter 11 Cases;

(4)     the consummation of the sale or other disposition of all or substantially all of the assets of either of the Debtors;

(5)     the occurrence of any breach by either of the Debtors of this Order (including, but not limited to, either Debtors' failure to adhere to an Approved Budget as set forth in ordering paragraph 17 of this Order or violation of any of the covenants provided for in ordering paragraph 19 of this Order) or the Final Order, or under any of the DIP Loan Documents, except (a) any defaults that may have existed under any Pre-Petition Loan Documents as of the Petition Date, (b) any defaults under any of the Pre-Petition Loan Documents to which Debtors are not parties, and (c) any defaults arising under Amended And Restated Security Agreement Sections 19(c)(i), (d), (e)(i) with respect to Subsidiaries (as that term is defined therein), (e)(ii), (g), (i), (j), (n) if otherwise excepted under this Order, and (o) if otherwise excepted under this Order;

(6)     the dismissal of either of the Chapter 11 Cases or the conversion of either of the Chapter 11 Cases into a case under Chapter 7 of the Bankruptcy Code;

(7)     the CRO is removed or his appointment is not approved on a final basis;

(8)     upon and following the entry of an order authorizing the appointment in either of the Debtors' Chapter 11 Cases of a trustee or an examiner with enlarged powers (beyond those set forth in § 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtors without the prior written consent of the DIP Lender (which consent may be withheld, or, if given revoked, by the DIP Lender in its sole discretion), or if either of the Debtors applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the DIP Lender (which consent may be withheld in its sole discretion);

(9)     this Order or the Final Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written

consent of the DIP Lender (which consent may be withheld in its sole discretion);

(10)  the Court enters an order granting a party relief from the automatic stay with respect to any portion of the Pre-Petition Collateral or the DIP Facility Collateral (defined in paragraph 7 below) provided that the value of the relevant collateral is more than $15,000;

(11)  any party asserts a challenge to, or this or any other Court enters an order or judgment in either of the Chapter 11 Cases modifying, limiting, subordinating or avoiding the priority of the Indebtedness, or the perfection, priority or validity of the Pre-Petition Lenders' or the DIP Lender's Pre-Petition or DIP Facility Liens or imposing, surcharging or assessing against the Pre-Petition Lenders, the DIP Lender or their claims or any Pre-Petition Collateral or DIP Facility Collateral (defined in paragraph 7 below), any fees, costs or expenses, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise;

(12)  The board(s) of either of the Debtors are reconstituted without prior notice and consent of the DIP Lender;

(13)  subject to the Court's calendar, the failure of the Debtors to obtain an order from the Court establishing procedures relating to the conducting of an auction in connection with the sale of substantially all of the Debtors' assets ("Asset Sale") which procedures are acceptable to the Pre-Petition Lenders and the DIP Lender and permit the Pre-Petition Lenders and the DIP Lender to credit bid the Pre-Petition Indebtedness and the DIP Indebtedness without condition (the "Asset Sale Procedures") by May 10, 2010 (or such later date as the DIP Lender shall agree in writing);

(14)  if the Debtors have not entered into an agreement for the Asset Sale on terms and conditions which are acceptable to the DIP Lender by May 24, 2010 (or such later date as the DIP Lender shall agree in writing;

(15)  subject to the Court's calendar, the failure of the Debtors to obtain an order from the Court approving the Asset Sale in a form acceptable to the Pre-Petition Lenders and the DIP Lender (the "Sale Order") by June 24, 2010 (or such later date as the DIP Lender shall agree in writing);

(16)  if the Asset Sale acceptable to the Pre-Petition Lenders and the DIP Lender has not closed by July 9, 2010 (or such later date as the DIP Lender shall agree in writing);

(17)    if the Debtors or CRO do not cooperate in the disclosure of information reasonably requested by the Pre-Petition Lenders, the DIP Lender or by any consultant retained by either the Pre-Petition Lenders or the DIP Lender;

(18)    the Debtors' or CRO's failure to comply with its reporting obligations under paragraph 18 of this Order; and

(19)    the resignation or termination of any member of the Debtors' senior management without the DIP Lender's written consent and retention of a replacement acceptable to the DIP Lender, which consent shall not be unreasonably withheld.

7.    <u>Liens to Secure the DIP Indebtedness</u>.  As security for the DIP Indebtedness, the DIP Lender is hereby granted the following security interests and liens (the "<u>DIP Facility Liens</u>") in all currently owned or hereafter acquired property and assets of the Debtors of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, goods, accounts receivable, inventory, cash in advance deposits, general intangibles, goodwill, investment property (including, without limitation, ownership interests in corporations, partnerships, and limited liability companies), deposit accounts, real estate, intellectual property, machinery, leases and leasehold interests, fixtures, equipment, vehicles, trademarks, trade names, licenses, the Pre-Petition Collateral, causes of action including, but subject to the entry of the Final Order, actions for preferences, fraudulent conveyances, and other avoidance power claims and any recoveries under §§ 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, other than any such claims or recoveries against or from the Pre-Petition Lenders (collectively, "<u>Avoidance Actions</u>"), and, upon entry hereof, actions and recoveries thereon against third parties, tax refund claims, commercial tort claims and insurance proceeds, and the proceeds, products, rents and profits of all of the foregoing (all

of the foregoing, the "DIP Facility Collateral"), subject only to, in the event of the termination of

the DIP Facility and the payment of the Carve-Out (as defined in paragraph 15):

(a)    Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first

priority senior security interest in and lien upon all property of the Debtors, whether existing on

the Petition Date or thereafter acquired, that, as of the Petition Date, is not subject to valid,

perfected and non-avoidable liens;

(b)    Pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected security

interest in and lien upon all property of the Debtors, including the DIP Facility Collateral,

whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected and

unavoidable liens in existence as of the Petition Date, which liens are senior to those of the Pre-

Petition Lenders under applicable non-bankruptcy law (the "Permitted Liens");

(c)    Pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first

priority senior priming lien (the "Priming Liens") as to the Pre-Petition Lenders on all of the DIP

Facility Collateral, and the Pre-Petition Collateral, which shall be senior to all other security

interests and liens in property of the Debtors' estate except only Permitted Liens; and

(d)    In addition, except to the extent otherwise expressly set forth in this Order,

or in a written instrument, agreement or other document executed by the DIP Lender, and subject

to Paragraph 24 of this Order (i) neither the Pre-Petition Liens nor the DIP Facility Liens shall be

subject to subordination to any other liens, security interests or claims under Section 510 of the

Bankruptcy Code, or otherwise and (ii) any security interest or lien upon the Pre-Petition

Collateral or the DIP Facility Collateral which is avoided or otherwise preserved for the benefit

of the Debtors' estate under Section 551 or any other provision of the Bankruptcy Code shall be

subordinate to the Pre-Petition Liens, the DIP Facility Liens and the Adequate Protection Liens

(defined in paragraph 8 below).

       8.     <u>Adequate Protection Liens</u>.  As adequate protection of the Pre-Petition Lenders'

interests in the Pre-Petition Collateral, including use of the Cash Collateral, pursuant to §§ 361,

363 and 552(b) of the Bankruptcy Code, the Pre-Petition Lenders are hereby granted valid,

binding, enforceable and perfected additional and replacement liens (the "<u>Adequate Protection</u>

<u>Liens</u>") in all property of the Debtors' estate, including the DIP Facility Collateral, the

Avoidance Actions, and proceeds thereof (upon entry of the Final Order) to the extent of any

decrease in the value of the Pre-Petition Lenders' interests in the Pre-Petition Collateral

occurring subsequent to the Petition Date, with such decrease in value to include decreases

resulting from the Debtors' use (if any) of Cash Collateral, the depreciation, use, sale, loss,

decline in value or market price of the Pre-Petition Collateral, or otherwise.  The Adequate

Protection Liens shall enjoy the same validity, priority and extent as the liens the Pre-Petition

Lenders held on the Petition Date.  The Adequate Protection Liens are subject only to (a) the

Permitted Liens; (b) the Carve-Out (as defined in paragraph 15); and (c) the DIP Facility Liens.

       9.     <u>Section 507(b) Priority Administrative Claims</u>.  If, notwithstanding the provision

of the Adequate Protection Liens, such liens do not provide adequate protection of the Pre-

Petition Lenders' interests in the Pre-Petition Collateral, the Pre-Petition Lenders shall (a) have a

claim allowed under §§ 507(a)(2) and 507(b) of the Bankruptcy Code (the "<u>507(b) Claim</u>"), and,

except with respect to being subordinated to the Carve-Out, such 507(b) Claim shall be entitled

to priority over every other claim allowable under such § 507(a)(2); and (b) notwithstanding

anything herein to the contrary, be entitled to seek further adequate protection of their interests

and such further relief as is consistent therewith.

10.    <u>Superpriority Claims</u>.  Subject to the Carve-Out described in ordering paragraph 15 below, all of the DIP Indebtedness shall have the highest administrative priority under § 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Cases or any successor case), and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in the Chapter 11 Cases or any successor case (the "<u>Superpriority Claims</u>").  Nothing in this Order or any Approved Budget (as defined in paragraph 17 below) shall constitute the consent by the DIP Lender or the Pre-Petition Lenders to the imposition of any costs or expense of administration or other charge, fees, liens, assessment or claim (including, without limitation, any amounts set forth in any Approved Budget) against the DIP Lender or the Pre-Petition Lenders, their claims or collateral (including the Pre-Petition Collateral and the DIP Facility Collateral) under § 506(c) of the Bankruptcy Code or otherwise, all of which rights will be waived upon entry of a Final Order.

11.    <u>Perfection of DIP Facility Liens and Adequate Protection Liens</u>.  The DIP Facility Liens and the Adequate Protection Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; <u>provided</u>, <u>however</u>, that notwithstanding the provisions of § 362 of the Bankruptcy Code, (a) the DIP Lender may, at its sole option, file or record or cause the Debtors to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtors' expense, any such UCC financing statements, notices of liens and security interests,

mortgages and other similar documents as the DIP Lender may require to perfect its security

interests on the DIP Facility Collateral, and (b) the DIP Lender may require the Debtors to

deliver to the DIP Lender any chattel paper, instruments or securities evidencing or constituting

any DIP Facility Collateral, and the Debtors are directed to cooperate and comply therewith.  If

the DIP Lender, in its sole discretion, shall elect for any reason to cause to be obtained any

landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded

any such notices, financing statements, mortgages or other documents with respect to such

security interests and liens, or if the DIP Lender, in accordance with the DIP Loan Documents or

this Order, elects to take possession of any DIP Facility Collateral, all such landlord or

warehouse lien waivers or other third party consents, financing statements or similar documents

or taking possession shall be deemed to have been filed or recorded or taken in either of these

Chapter 11 Cases as of the commencement of these Chapter 11 Cases but with the priorities as

set forth herein.  The DIP Lender and the Pre-Petition Lenders may (in their sole discretion), but

shall not be required to, file a certified copy of this Order in any filing or recording office in any

county or other jurisdiction in which the Debtors have real or personal property and such filing

or recording shall be accepted and shall constitute further evidence of (c) the DIP Lender's

interest in the DIP Facility Collateral and (d) the Pre-Petition Lenders' interest in the Pre-Petition

Collateral.

    12.    <u>Waiver by the Debtors of Liens and Other Matters</u>.  Subject to the Debtors'

Review Period, the Debtors and their estates (and any party in interest acting on behalf of the

Debtors) hereby irrevocably waive, and are barred from asserting or exercising any right (a)

without the Pre-Petition Lenders' or the DIP Lender's prior written consent (which may be

withheld in their sole discretion) or (b) without prior indefeasible payment and satisfaction in full

of all of the Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under

§ 364 of the Bankruptcy Code, or otherwise, liens on or security interests in any DIP Facility

Collateral, which are <u>pari</u> <u>passu</u> with or senior to the DIP Facility Liens or the Adequate

Protection Liens; (ii) to return goods pursuant to § 546(h) of the Bankruptcy Code to any creditor

of the Debtors or to consent to any creditor taking any setoff against any of such creditor's pre-

petition indebtedness based upon any such return pursuant to § 553(b)(1) of the Bankruptcy

Code or otherwise; (iii) to seek a surcharge of the DIP Facility Collateral or the Pre-Petition

Collateral under § 506(c) of the Bankruptcy Code; (iv) to modify or affect any of the rights of the

Pre-Petition Lenders or the DIP Lender under this Order or any DIP Loan Documents by any

order entered in either of the Chapter 11 Cases or any successor case; or (v) to propose or

support any plan of reorganization or liquidation or a sale of all or substantially all of the

Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the

indefeasible payment in full in cash, on or prior to the earlier to occur of the effective date of

such plan of reorganization or sale and the Termination Date, of all of the Indebtedness, or seek

an extension of the exclusive right to file a plan or solicit acceptances with respect to any plan of

reorganization or liquidation.

13.    <u>Sale Out of the Ordinary Course of Business</u>.  The Debtors may not propose a sale

of any of its assets outside the ordinary course of business without the DIP Lender's written

consent.  All proceeds realized from any Court-approved sale shall be transferred to the DIP

Lender and/or the Pre-Petition Lenders as their respective interests appear, for immediate

application in reduction of the Indebtedness (unless otherwise agreed to in writing by the Pre-

Petition Lenders and the DIP Lender), in the manner set forth in this Order and until such time as

the Indebtedness shall have been satisfied in full.  Such sale proceeds shall not be permitted to be

used by the Debtors under any circumstances except as otherwise provided by this Order, and

any sale application or procedure involving all or any portion of the Debtors' assets that are

subject to the Pre-Petition Liens of the Pre-Petition Lenders or the DIP Facility Liens shall

expressly provide that the Pre-Petition Lenders and the DIP Lender may exercise their rights to

credit bid their indebtedness under § 363(k) of the Bankruptcy Code.

14.   Modification of Automatic Stay; Other Remedies.

(a)   Except as set forth in subparagraph (b) of this paragraph 14, which

governs any action of the Pre-Petition Lenders and/or the DIP Lender, as applicable, to foreclose

on their liens on any Pre-Petition Collateral or DIP Facility Collateral or to exercise any other

default-related remedies (other than those specifically referenced in paragraph 14(a)(iv)(x)-(z)

below), the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to the

Pre-Petition Lenders and DIP Lender to permit them to perform in accordance with, and

exercise, enjoy and enforce their rights, benefits, privileges and remedies pursuant to this Order

and the DIP Loan Documents without further application or motion to, or order from, the Court,

and regardless of any change in circumstances (whether or not foreseeable), and neither Section

105 of the Bankruptcy Code, nor any other provision of the Bankruptcy Code, nor any other law,

shall be utilized to prohibit the Pre-Petition Lenders or the DIP Lender from the exercise,

enjoyment and enforcement of any of such rights, benefits, privileges and remedies.  Subject to

the entry of the Final Order, the Pre-Petition Lenders and the DIP Lender are hereby granted

leave to receive and apply payments to the Indebtedness from collections on and proceeds of the

Pre-Petition Collateral and the DIP Facility Collateral in the manner specified in this Order and

the DIP Loan Documents.  In addition, the Pre-Petition Lenders and the DIP Lender are, as their

interests may appear, hereby granted leave to, among other things, to (i) file or record any

financing statements, mortgages or other instruments or other documents to evidence the

Adequate Protection Liens or the DIP Facility Liens, (ii) to charge and collect any interest, fees

(including reasonable attorneys' fees), costs, and expenses and other amounts accruing at any

time under the DIP Loan Documents (other than the Overadvance Fees or the Default Payments,

without waiving the rights of the Pre-Petition Lenders to subsequently recover thereupon) or this

Order as provided therein, (iii) to give the Debtors any notice provided for in any of the DIP

Loan Documents or this Order, and (iv) upon the occurrence of a Termination Event, and

without application or motion to, or order from the Court or any other court, (x) terminate the

DIP Facility and the DIP Loan Documents, (y) declare all Indebtedness immediately due and

payable, and (z) revoke the Debtors' rights, if any, under this Order and/or the other DIP Loan

Documents to use Cash Collateral.

(b)      Upon the occurrence of a Termination Event or on any Termination Date,

the Pre-Petition Lenders and/or the DIP Lender, as the case may be, shall be entitled to an

expedited hearing within no later than three (3) business days (the "Stay Relief Notice Period")

after notice is given to the Debtors, counsel to the Debtors, counsel to the CRO, the Committee

and the U.S. Trustee, for a determination, subject to subparagraph (c) of this paragraph 14, on a

motion to be filed by the Pre-Petition Lenders and/or the DIP Lender (a "Termination Date Stay

Relief Motion") as to whether the Pre-Petition Lenders and/or the DIP Lender shall be granted an

order providing that the automatic stay under § 362 of the Bankruptcy Code shall be vacated and

modified with respect to the Pre-Petition Lenders and/or the DIP Lender for the purpose of

exercising all of their rights and remedies under the Pre-Petition Loan Documents, the DIP Loan

Documents, this Order or applicable law, including foreclosing or otherwise enforcing their liens

on any or all of the Pre-Petition Collateral and the DIP Facility Collateral, or to take any and all

actions and remedies which they deem appropriate to effectuate these rights and remedies.

Notwithstanding anything in this subparagraph to the contrary, the Debtors, the CRO and/or the

Committee shall be entitled to seek a hearing prior to the expiration of the Stay Relief Notice

Period, and the Pre-Petition Lenders and/or the DIP Lender, as the case may be, shall be entitled

to an immediate hearing in the event that either or both alleges fraud or other imminent danger to

any of the Pre-Petition Collateral or the DIP Facility Collateral.

(c)    Unless the Debtors, the CRO, the Committee, and/or the U.S. Trustee have

filed an objection to any Termination Date Stay Relief Motion with the Court and served same

upon the Pre-Petition Lenders and the DIP Lender within the Stay Relief Notice Period, the Pre-

Petition Lenders and/or the DIP Lender, as applicable, shall be entitled to file a certificate that no

objection to a Termination Date Stay Relief Motion was filed and the Court may enter an order

granting the relief requested in a Termination Date Stay Relief Motion without a hearing.  The

Debtors, the CRO, the Committee or the U.S. Trustee, as the case may be, shall have the burden

of proof at any hearing with respect to a Termination Date Stay Relief Motion and the only issue

that may be raised or addressed at such hearing or in connection with a Termination Date Stay

Relief Motion is whether a Termination Event or the Termination Date, as applicable, has

occurred.  Subject to the Debtors' rights in the foregoing sentence, the Debtors and the CRO

shall cooperate with the Pre-Petition Lenders and/or the DIP Lender in connection with any

enforcement action by such parties by, among other things, (i) providing access to their premises

to representatives of the Pre-Petition Lenders and/or the DIP Lender, (ii) providing the Pre-

Petition Lenders and/or the DIP Lender or its designees access to the Debtors' books and

records, (iii) performing all other obligations set forth in this Order, the Pre-Petition Loan

Documents and/or the DIP Loan Documents, and (iv) taking reasonable steps to safeguard and

protect the Pre-Petition Collateral and the DIP Facility Collateral until the Pre-Petition Lenders

and/or the DIP Lender can make adequate provision to protect and safeguard the Pre-Petition

Collateral and the DIP Facility Collateral, and neither the Debtors nor the CRO shall otherwise

interfere or encourage others to interfere with any and all of the Pre-Petition Lenders' and/or the

DIP Lender's rights.

  15. <u>Carve-Out.</u>

   (a) Subject to the remaining provisions of this paragraph, all liens and claims

of the Pre-Petition Lenders or the DIP Lender, including, but not limited to the Adequate

Protection Liens, the DIP Facility Liens, the Superpriority Claims, and the 507(b) Claim shall be

subject to (i) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (including,

without limitation, fees under 28 U.S.C. § 1930(a)(6)), (ii) the fees due to the Clerk of the Court,

(iii) the aggregate of actual fees and expenses incurred by the CRO and any professionals, for the

period prior to the occurrence of the Termination Date, provided such professionals were

retained by the Debtors, the CRO, or any committee pursuant to an order of the Court entered

pursuant to Sections 327 or 1103(b) of the Bankruptcy Code and that a line item exists on an

Approved Budget for such specific professionals (the "<u>Professionals</u>"), for the period beginning

on the Petition Date and ending on the Termination Date, to the extent that (x) such fees and

expenses are within the aggregate of the weekly amounts set forth in an Approved Budget for the

period beginning on the Petition Date and ending on the occurrence of the Termination Date, and

(y) with respect to the Professionals, such fees and expenses are allowed at any time, whether

before, on, or after the Termination Date by the Bankruptcy Court under Sections 330 and 331 of

the Bankruptcy Code, and (iv) the payment, following the occurrence of any Termination Event

which is not waived by the DIP Lender, of allowed professional fees and disbursements incurred

after notice of such Termination Date by the CRO and the Professionals, in an aggregate amount

not to exceed $25,000 (the "Burial Carve-Out," and, collectively with the fees and expenses

referenced in (i), (ii) and (iii) of this paragraph 15(a), the "Carve-Out"); provided that such

amounts are (y) not otherwise payable from unencumbered assets of the Debtors' estate and (z)

with respect to the Burial Carve-Out only, not otherwise payable from any unused portion of

amounts set forth in an Approved Budget for the period prior to the Termination Date.

(b)    Notwithstanding anything to the contrary in this Order or the DIP Loan

Documents, no proceeds of any Pre-Petition Collateral or DIP Facility Collateral of the Pre-

Petition Lenders (including any pre-petition retainer funded by the Pre-Petition Lenders), nor any

Pre-Petition Collateral of the Pre-Petition Lenders or DIP Facility Collateral (or proceeds

thereof) nor any portion of the Carve-Out may be used to pay any claims for services rendered

by any of the Debtors' or CRO's professionals, any other entity, or the Committee's

professionals, if any, in connection with the assertion of or joinder in any claim, counterclaim,

action, proceeding, application, motion, objection, defense or other contested matter, the purpose

of which is to seek or the result of which would be to obtain any order, judgment, determination,

declaration or similar relief (i) invalidating, setting aside, avoiding or subordinating, in whole or

in part, the Indebtedness or the liens and security interests of the Pre-Petition Lenders or the DIP

Lender in the Pre-Petition Collateral or in the DIP Facility Collateral; (ii) preventing, hindering

or otherwise delaying, whether directly or indirectly, the exercise by the Pre-Petition Lenders or

the DIP Lender of any of their rights and remedies under the Pre-Petition Loan Documents, this

Order and/or the DIP Loan Documents or the Pre-Petition Lenders' or the DIP Lender's

enforcement or realization upon any of the liens on or security interests in any Pre-Petition

Collateral or DIP Facility Collateral; (iii) requesting the use of the Cash Collateral without the

prior written consent of the Pre-Petition Lenders in accordance with the terms and conditions of

this Order, (iv) a request for authorization to obtain debtor-in-possession financing or other

financial accommodations pursuant to § 364(c) or § 364(d) of the Bankruptcy Code, other than

from the Pre-Petition Lenders or the DIP Lender, without the prior written consent of the Pre-

Petition Lenders and the DIP Lender, (v) the commencement or prosecution of any action or

proceeding of any claims, causes of action or defenses against the Pre-Petition Lenders or the

DIP Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates,

successors or assigns, including, without limitation, any attempt to recover or avoid any claim or

interest from the Pre-Petition Lenders or the DIP Lender under Chapter 5 of the Bankruptcy

Code, or (vi) any act which has or could have the effect of materially and adversely modifying or

compromising the rights and remedies of the Pre-Petition Lenders or the DIP Lender, or which is

contrary, in a manner that is material and adverse to the Pre-Petition Lenders or the DIP Lender,

to any term or condition set forth in or acknowledged by the DIP Loan Documents, the Pre-

Petition Loan Documents or this Order; provided, however, that the foregoing limitations shall

not apply to claims (1) to contest whether a Termination Event has occurred and (2) for services

rendered by the Professionals retained by the Debtors during the Debtors' Review Period and the

Committee, if any, within the time provided in Paragraph 24 of this Order in connection with the

investigation of the validity, extent, priority, avoidability or enforceability of the Pre-Petition

Indebtedness or the Pre-Petition Liens of the Pre-Petition Lenders.  The Pre-Petition Lenders and

the DIP Lender shall retain their rights as parties in interest to object to any fee applications or

other claims of any entity, including but not limited to the professionals for the Debtors, the CRO

and the Committee, if any.

(c)     So long as no Termination Event has occurred as to which notice of same has been provided to the Debtors, the Debtors are authorized to use the proceeds of the DIP Facility and the Cash Collateral in accordance with and limited to the amounts in the Approved Budget to pay such compensation and expense reimbursements of the CRO, professional persons retained by the CRO on behalf of the Debtors (the "Debtor Professionals"), and any Committee appointed by the United States Trustee (the "Committee Professionals") as may be awarded by the Court pursuant to Section 328, 330 or 331 of the Bankruptcy Code (the "Professional Expenses").  The Debtor Professionals and the Committee Professionals, if any, shall be permitted to submit to the Debtors, with copies to counsel for the DIP Lender, periodic statements (but no more frequently than on a monthly basis) for services rendered and reimbursable expenses incurred by them (the "Conditional Professional Expenses").  Nothing in this subparagraph shall prejudice or impair the rights of either the CRO or the Professionals to request an award of compensation in excess of the amounts set forth in the Approved Budget (the "Unbudgeted Professional Expenses") or the rights of the DIP Lender or the Pre-Petition Lenders to object to the amount or reasonableness of the expenses of the CRO, the Debtors' professionals or any Committee professionals, including the Conditional Professional Expenses or the Unbudgeted Professional Expenses.  In no event, however, shall (i) the Pre-Petition Lenders or the DIP Lender be responsible for the payment of any professional expenses other than the Carve-Out, or (ii) the proceeds of the DIP Facility, the DIP Facility Collateral, the Pre-Petition Collateral or the Cash Collateral be utilized for Unbudgeted Professional Expenses or any amounts in excess of the amounts in an Approved Budget and Carve-Out, other than the Burial Carve-Out, unless and until the DIP Lender and Pre-Petition Lenders are paid in full.

16.   <u>Cash Collection Procedures</u>.  From and after the date of the entry of this Order all collections and proceeds of any DIP Facility Collateral which shall at any time come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, shall be deposited in the same bank accounts into which the collections and proceeds of the Pre-Petition Collateral were deposited under the Pre-Petition Loan Documents (or in such other accounts as are designated by the Pre-Petition Lenders and the DIP Lender from time to time), and such collections and proceeds upon such deposit shall become the sole and exclusive property of the Pre-Petition Lenders or the DIP Lender and shall be applied against the Indebtedness as provided in this Order and the DIP Loan Documents.  In the event the Debtors intend to open any new bank accounts that would affect the right and ability of the Pre-Petition Lenders and the DIP Lender to receive any proceeds as contemplated by this Order, the Debtors shall first obtain a "lock box agreement" or other written confirmation to the satisfaction of the Pre-Petition Lenders and the DIP Lender from the relevant banking institution recognizing the rights of the Pre-Petition Lenders and the DIP Lender as provided for in this Order.  All cash and cash equivalents of the Debtors currently in any account of the Debtors or otherwise in the possession or control of the Debtors constitute proceeds of the Pre-Petition Collateral and shall be immediately remitted to the Pre-Petition Lenders for application against the Indebtedness.  All financial institutions in which any lockboxes, blocked accounts or other accounts of the Debtors are located are hereby authorized and directed to comply with any request of the Pre-Petition Lenders and the DIP Lender to turnover to the Pre-Petition Lenders and the DIP Lender all funds therein without offset or deduction of any kind.

17.    Budget; Use of Cash Collateral and DIP Facility Proceeds.

(a)    Attached as Exhibit A hereto and incorporated herein by reference is a budget (which has been approved by the DIP Lender) setting forth by line item all projected cash receipts, sales and cash disbursements for the time period from April 22, 2010, through _____, 2010 (the "Initial Approved Budget"). The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the Pre-Petition Lenders and the DIP Lender agree in their sole discretion (each such additional budget, a "Supplemental Approved Budget"), so long as such modification or supplement does not alter the amount of the Professional Fee Expenses set forth on any Approved Budget without the consent of the Debtors Professionals and Committee Professionals. The aggregate of all items approved by the DIP Lender and the Pre-Petition Lenders in the Initial Approved Budget and any and all Supplemental Approved Budget (acceptable to the Pre-Petition Lenders and the DIP Lender in their sole discretion) shall constitute an "Approved Budget."

(b)    The Debtors may use Cash Collateral and the proceeds of the DIP Facility exclusively to pay for the expenses incurred by the Debtors as provided for in the Approved Budget and the Burial Carve-Out. The Debtors represent and warrant that (i) the expenditures set forth in the Approved Budget constitute all of the Debtors' projected expenses during the period of the Approved Budget, and (ii) the Cash Collateral and the sums to be advanced by the DIP Lender pursuant to the DIP Facility are sufficient to pay all of the expenses set forth in the Approved Budget. The Debtors' disbursements shall not exceed those set forth in the Approved Budget, in all cases subject to the Approved Sales Variance, the Approved Cash Receipts Variance, and the Approved Disbursements Variance (all as defined below, collectively referred

to as the "Approved Variances").  Notwithstanding the foregoing, the DIP Lender shall have no

obligation to provide the DIP Facility if the Debtors exceed the disbursement amounts provided

in an Approved Budget.  As used herein, the Approved Variances include, and are defined and

calculated as follows:

> (1)    "Approved Sales Variance" means a negative variance of less than
> 7%, between the Debtors' actual sales and the Debtors' projected
> sales measured (a) commencing at the end of the second week
> covered by the Approved Budget and each week thereafter, and (b)
> cumulatively from the commencement of the Chapter 11 Cases
> concluding with the week during which the variance is being
> calculated;

> (2)    "Approved Cash Receipts Variance" means a negative variance of
> less than 7%, between the Debtors' actual cash receipts and the
> Debtors' projected cash receipts measured (a) on a weekly basis
> commencing with the end of the second week covered by the
> Approved Budget and each week thereafter, and (b) cumulatively
> from the commencement of the Chapter 11 Cases concluding with
> the week during which the variance is being calculated;

> (3)    "Approved Disbursements Variance" means a positive variance of
> less than 4% of the Debtors' actual disbursements and the Debtors'
> projected disbursements, on a cumulative basis, each measured (a)
> on a weekly basis commencing with the end of the second week
> covered by the Approved Budget and each week thereafter, and (b)
> cumulatively from the commencement of the Chapter 11 Cases
> concluding with the week during which the variance is being
> calculated.

18.    Financial Reporting.  Notwithstanding anything to the contrary contained in this

Order, Debtors shall not be required to comply with Section 11 of the Amended And Restated

Security Agreement during the pendency of these cases.  However, Debtors shall provide the

following reports to the DIP Lender:  (a) no later than 5:00 p.m. (prevailing Eastern Time) each

business day, a written report setting forth the previous day's disbursements and collections; (b)

no later than 5:00 p.m. (prevailing Eastern time) each Wednesday, a comparison of the items in

the Budget for the preceding week to the Debtors' actual performance that includes a narrative

summary of any material variances from the Budget for the preceding week; (c) no later than

5:00 p.m. (prevailing Eastern time) each Wednesday, a detailed report from any investment

banker retained by the CRO that summarizes the status of the Debtors' efforts to sell

substantially all of its assets as a going concern, which report shall include (i) a tracking chart

reflecting what communications, if any, the investment banker had with interested parties during

the prior week; (ii) copies of expressions of interest or letters of intent received by the Debtors

from third parties; (iii) a summary of the due diligence activities conducted by interested parties

in the preceding week; and (iv) a time table for execution of definitive agreements with potential

parties and the filing of pleadings with the Court seeking approval of the sale; and (d) no later

than the 10th day of each month, beginning May 10, 2010, the Debtors' financial statements

(including detail by operating division and consolidated balance sheets, income statements and

cash flow statements) for the immediately preceding month in the same format as the Debtors

have been providing, or were required to provide, to the Pre-Petition Lenders prior to the Petition

Date, (e) no later than the third (3rd) business day prior to any request for funding under this

Order, a detailed list of the disbursements to be paid with such requested funding, together with

such other detail as may be requested by the DIP Lender, and (f) any other reports requested by

the DIP Lender.

      19.    [Intentionally Deleted]

      20.    <u>The DIP Lender and the Pre-Petition Lenders Reservation of Rights</u>. The DIP

Lender and the Pre-Petition Lenders do not waive, and expressly reserve, any and all claims,

defenses, rights and remedies they have pursuant to any or all of the Pre-Petition Loan

Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against

the Debtors and any officer, director, employee, agent or other representative of the Debtors.  In

addition, the rights and obligations of the Debtors and the rights, claims, liens, security interests

and priorities of the DIP Lender and the Pre-Petition Lenders arising under this Order are in

addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims,

liens, security interests and priorities granted by the Debtors, in its pre-petition capacity, under

the Pre-Petition Loan Documents.

21.    <u>Order Binding on Successors</u>.  The provisions of this Order shall be binding upon

and inure to the benefit of the DIP Lender, the Pre-Petition Lenders, the Debtors and the CRO

and their respective successors and assigns (including any trustee or other estate representative

appointed as a representative of the Debtors' estate or of any estate in any successor case).  No

third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or

the DIP Loan Documents.

22.    <u>Releases and Validation of Pre-Petition Indebtedness and Pre-Petition Liens;</u>

<u>Allowance of Pre-Petition Indebtedness as Fully Secured Claim</u>.  The release, discharge, waivers

and agreements set forth in this ordering paragraph will be deemed effective upon the entry of

the Final Order incorporating this paragraph, subject only to the Debtors' Review Period and the

rights of the Committee, if any, and any other party in interest (other than the Debtors or the

CRO), as set forth in paragraph 24 below.  Subject to Paragraph 24 of this Order, the Debtors

(including the CRO on behalf of the Debtors) and their estates, hereby: (a) release and discharge

the Pre-Petition Lenders and the DIP Lender together with all of their affiliates, agents,

attorneys, officers, directors and employees from any and all claims and causes of action arising

out of, based upon or related to, in whole or in part, any of the Pre-Petition Loan Documents, any

aspect of the pre-petition relationship between the Pre-Petition Lenders and the Debtors, or any

other acts or omissions by the Pre-Petition Lenders in connection with any of the Pre-Petition

Loan Documents, or the Pre-Petition Lenders' pre-petition relationship with the Debtor, or

otherwise ; (b) waive any and all claims, defenses (including, without limitation, offsets and

counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability,

subordination and avoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the

Bankruptcy Code or otherwise) of the Pre-Petition Indebtedness and the security interests in and

liens on the Pre-Petition Collateral in favor of the Pre-Petition Lenders; and (c) agree, without

further Court order and without the need for the filing of any proof of claim, to the allowance of

the pre-petition claims of the Pre-Petition Lenders pursuant to §§ 502 and 506 of the Bankruptcy

Code on account of the Pre-Petition Indebtedness totaling no less than $15,005,232.48 as of the

Petition Date, as fully secured claims.

      23.   <u>No Liability to Third Parties</u>.  The DIP Lender shall not (a) have liability to any

third party nor shall it be deemed to be in control of the operations of the Debtors or to be acting

as a "controlling person", "responsible person" or "owner or operator" with respect to the

operation or management of the Debtors (as such terms, or any similar terms, are used in the

Internal Revenue Code, the Unites States Comprehensive, Environmental Response,

Compensation and Liability Act as amended, or any similar Federal or state statute), or owe any

fiduciary duty to the Debtors, its creditors or its estate, and (b) the DIP Lender's relationship

with the Debtors shall not constitute nor be deemed to constitute a joint venture or partnership

with the Debtors.

      24.   <u>Objections by Parties in Interest</u>.  All of the provisions of this Order shall be final

and binding on the Debtors (including, without limitation, its successors and assigns), the CRO,

the Debtors' shareholders, any Committee, and all creditors and other parties in interest,

including any Chapter 11 or Chapter 7 trustee hereinafter appointed, except that (a) the Debtors

shall have until the earlier of (i) the entry of the Final Order or (ii) fifteen (15) days from the

entry of this Order (the "Debtors' Review Period"), and (b) any Committee and any other party

in interest (other than the Debtors or the CRO) shall have until the earlier of (i) sixty (60) days

from the Petition Date, (ii) forty-five (45) days from its formation, and (iii) seven (7) days from

the date that bids are due relating to an Asset Sale, within which to file, on behalf of the Debtors,

and to serve upon counsel for the Pre-Petition Lenders and the DIP Lender, objections or

complaints respecting the claims, causes of actions and defenses released by the Debtors

pursuant to ordering paragraph 22 above or the validity, extent, priority, avoidability, or

enforceability of the Pre-Petition Indebtedness and the Pre-Petition Liens in the Pre-Petition

Collateral, including seeking to subordinate any liens or claims of the Pre-Petition Lenders under

Section 510 of the Bankruptcy Code, or otherwise (including, without limitation, the provisions

of paragraphs E, F, G, 12 and 22 above).  In the event that no objections or complaints are filed

with this Court by the Debtors or any Committee and served upon counsel for the Pre-Petition

Lenders and the DIP Lender within the time period set forth above, all of the provisions of this

Order including, without limitation, paragraph 22 and the Debtors' stipulations in this Order

shall become final and binding for all purposes and upon all parties.

   25. Effect of Modification of Order.  The Debtors shall not, without the DIP Lender's

prior written consent (which shall be given or refused in its sole discretion), seek to modify,

vacate or amend this Order or any DIP Loan Documents.  If any of the provisions of this Order

are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such

stay, modification or vacatur shall not affect the validity of any obligation outstanding

immediately prior to the effective time of such stay, modification or vacation, or the validity and

enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to

any such obligations.  Notwithstanding any such stay, modification or vacatur, any obligation

outstanding immediately prior to the effective time of such modification, stay or vacatur shall be

governed in all respects by the original provisions of this Order, and the Pre-Petition Lenders and

the DIP Lender shall be entitled to all the rights, privileges and benefits, including, without

limitation, the security interests and priorities granted herein, with respect to all such obligations.

26.    Safe Harbor.  The Court has considered and determined the matters addressed

herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the

Debtors to obtain credit on the terms and conditions upon which the Debtors, through the CRO,

and the DIP Lender have agreed.  Thus, each of such terms and conditions constitutes a part of

the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the

protections contained in § 364(e) of the Bankruptcy Code.

27.    Subsequent Hearing; Procedure for Objections and Entry of Final Order.  The

Motion is set for a final hearing ("Final Hearing") before this Court at _____:_____ ____m. on

_____, 2010 (such date or such later date to which the Final Hearing is

adjourned or continued with the Pre-Petition Lenders' consent, the "Final Hearing Date"), at

which time any party in interest may present any timely filed objections to the entry of the Final

Order, which Final Order shall be in form and substance reasonably acceptable to the DIP

Lenders in its sole discretion.  The Debtors shall promptly serve a copy of this Order, by regular

mail upon (a) the United States Trustee; (b) all affected state and federal taxing authorities; (c)

the creditors holding the twenty (20) largest unsecured claims against the Debtors, or the

Committee, if appointed; and (d) any other party which theretofore has filed in either of the

Chapter 11 Cases a request for special notice with this Court and served such request upon

Debtors' counsel.  Any objections to this Order and the entry of a Final Order on the Motion

shall be in writing and shall be filed with the Court and served by _____, 2010, so

that they are received on or before 4:00 p.m. (prevailing Eastern Time) of such date by (i) Stuart

Komrower, Esq., Cole, Schotz, Meisel, Forman & Leonard, P.A., Court Plaza North, 25 Main

Street, Post Office Box 800, Hackensack, New Jersey 07602-0800; (ii) John K. Lyons, Esq.,

Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Chicago, Illinois 60606-

1720; (iii) Nancy A. Peterman and Andrew R. Cardonick, Greenberg Traurig, LLP, 77 West

Wacker Drive, Suite 3100, Chicago, IL  60601; and (iv) the United States Trustee.  Any

objections by creditors or other parties in interest to any of the provisions of this Order shall be

deemed waived unless filed and served in accordance with this paragraph.

28.    _Objections Overruled or Withdrawn_.  All objections to the entry of this Order

have been withdrawn or are hereby overruled.

29.    _Controlling Effect of Order_.  To the extent any provisions in this Order conflict

with any provisions of the Motion, any Pre-Petition Loan Document, or any DIP Loan

Document, the provisions of this Order shall control.

30.    _Order Effective_.  This Order shall be effective as of the date of signature by the

Court or "so ordered" ruling from the bench; _provided_, _however_, that any use of Cash Collateral

by the Debtors from and after the Petition Date, including the CRO's use of approximately

$98,000 on or about April 23, 2010, to which the Pre-Petition Lenders have consented, shall be

entitled to the provisions and protections set forth in this Order _nunc pro tunc_ to the date of such

use.

31.    _Binding Nature of the CRO Appointment Order_.  Nothing herein is intended to

alter the provisions set forth in the CRO Appointment Order, which shall be enforceable in all

respects.  To the extent any provisions in this Order conflict with any provisions of the CRO

Appointment Order, the CRO Appointment Order shall control.  All references to a "Debtor" or

the "Debtors" herein shall be deemed to refer to the CRO in his capacity as CRO of the Debtors

whether or not expressly stated.

32.    <u>Non Waiver</u>.  No omission or delay by the Pre-Petition Lenders or the DIP Lender

in exercising any right or powers under this Order, the Pre-Petition Loan Documents or DIP

Loan Documents, or any related agreement, will impair such right or power or be construed to be

a waiver of any default or breach or an acquiescence therein, and any single or partial exercise of

any such right or power will not preclude other or further exercise thereof or the exercise of any

other right, and no waiver will be valid unless in writing and signed by all the Pre-Petition

Lenders or the DIP Lender and then only to the extent specified.

Dated:  April _____, 2010



_____
Honorable Jack B. Schmetterer
United States Bankruptcy Judge