**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PPM TECHNOLOGIES HOLDINGS, INC., et al. | ) ) ) | Case Nos. 10-14788 and 10-14795 (Jointly Administered) |
| | ) | |
| Debtors.[1] | ) ) | Hon. Jack B. Schmetterer |
| | ) ) ) ) | Hearing Date: May 21, 2010 at 11:30 a.m. Objection Deadline: May 19, 2010 at 4:00 p.m. |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that on **May 21, 2010, at 11:30 a.m.**, or a soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Judge Jack B. Schmetterer, Courtroom 682, United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, and present the proposed *Final Order Authorizing (A) Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364(c) and (d); (B) Granting Security Interests, Superpriority Claims and Adequate Protection; and (C) Use of Cash Collateral* (the "**Final Financing Order**"), a copy of which is attached as **Exhibit A** and hereby served upon you. The redlined version of the Final Financing Order, attached hereto as **Exhibit B,** reflects those changes made to Interim Financing Order entered on April 30, 2010 [Docket No. 92], which is attached hereto as **Exhibit C**.

**PLEASE TAKE FURTHER NOTICE** that all Objections to entry of the Final Financing Order must be made in writing and filed with the Court's ECF system (https://ecf.ilnb.uscourts.gov), together with proof of service on or before **May 19, 2010 at 4:00 p.m.** (prevailing Central Time) (the "**Objection Deadline**"), and shall (a) state the name and address of the objecting party; (b) state with particularity the objections to the Final Financing Order; and (c) be served upon: (i) Greenberg Traurig LLP, 77 W. Wacker Drive, Suite 3100, Chicago, Illinois 60601; Attn: Nancy A. Peterman, Esq. and Andrew R. Cardonick, Esq.; Fax: (312) 456-8435; (ii) Cole Schotz, Meisel, Forman & Leonard, P.A., Court Plaza North, 25 Main Street, Hackensack, NJ 07601; Attn: Stuart Komrower, Esq. and David M. Bass, Esq.; Fax (201) 489-1536; (iii) Skadden Arps Slate Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606; Attn: John K. Lyons, Esq.; Fax: (312) 407-0411; and (iv) the Office of the United States Trustee for the Northern District of Illinois, 219 S Dearborn St., Room 873, Chicago, IL 60604; Attn: Gretchen Silver, Esq.; Fax: (312) 886-5794, so as to be received on or before the Objection Deadline. Any objections not filed and served as set forth above will not be considered by the Court.

---

[1] The Debtors in these cases are PPM Technologies Holdings, Inc. d/b/a PPM Global Corporation and PPM Technologies Inc.

*CHI 59,603,080v2*

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Rule 4001-2, certain salient terms of the DIP Loan Documents are set forth below:[2]

(a) <u>Borrowers</u>: PPM Technologies Holdings, Inc and PPM Technologies, Inc.

(b) <u>DIP Lender</u>: Collectively, Valens U.S. and/or the successors, participants and assigns of and with Valens U.S.

(c) <u>Interest Rate</u>: The Post-Petition Financing shall bear interest at the non-default rate set forth in the Pre-Petition Loan Documents.

(d) <u>Maturity Date/Termination Date</u>: The date upon which a Termination Event occurs.

(e) <u>Termination Event</u>: Upon the occurrence of any of the following, the DIP Lender's agreement to provide the Post-Petition Financing in accordance with the DIP Loan Documents and the Pre-Petition Lenders' consent to the use of the Cash Collateral shall immediately and automatically terminate (except as the DIP Lender and/or the Pre-Petition Lenders may otherwise agree in writing in their sole discretion):

    (1) the date of final indefeasible payment and satisfaction in full in cash of the Indebtedness;

    (2) the effective date of any confirmed plan in either of the Chapter 11 Cases;

    (3) the consummation of the sale or other disposition of all or substantially all of the assets of either of the Debtors;

    (4) the occurrence of any breach by either of the Debtors of the Interim Order or the Final Financing Order (including, but not limited to, either Debtors' failure to adhere to an Approved Budget as set forth in ordering paragraph 17 of the Final Financing Order or violation of any of the covenants provided for in ordering paragraph 19 of the Final Financing Order), or under any of the DIP Loan Documents, except (a) any defaults that may have existed under any Pre-Petition Loan Documents as of the Petition Date, (b) any defaults under any of the Pre-Petition Loan Documents to which Debtors are not parties, and (c) any defaults arising under Amended And Restated Security Agreement Sections 19(c)(i), (d), (e)(i) with respect to Subsidiaries (as that term is defined therein), (e)(ii), (g), (i), (j), (n) if otherwise excepted under the Final Financing Order, and (o) if otherwise excepted under the Final Financing Order;

---

[2] Any capitalized terms used in the following summary that are not defined herein are ascribed the meanings given to such terms in the DIP Loan Documents. Moreover, to the extent the terms set forth herein differ from the terms in the attached Final Financing Order, the Final Financing Order shall govern in the first instance.

(5) the dismissal of either of the Chapter 11 Cases or the conversion of either of the Chapter 11 Cases into a case under Chapter 7 of the Bankruptcy Code;

(6) the CRO is removed or his appointment is not approved on a final basis;

(7) upon and following the entry of an order authorizing the appointment in either of the Debtors' Chapter 11 Cases of a trustee or an examiner with enlarged powers (beyond those set forth in § 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtors without the prior written consent of the DIP Lender (which consent may be withheld, or, if given revoked, by the DIP Lender in its sole discretion), or if either of the Debtors applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the DIP Lender (which consent may be withheld in its sole discretion);

(8) the Emergency Cash Collateral Order, the Interim Order or the Final Financing Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender (which consent may be withheld in its sole discretion);

(9) the Court enters an order granting a party relief from the automatic stay with respect to any portion of the Pre-Petition Collateral or the DIP Facility Collateral (defined in paragraph 7 below) provided that the value of the relevant collateral is more than $15,000;

(10) any party asserts a challenge to, or this or any other Court enters an order or judgment in either of the Chapter 11 Cases modifying, limiting, subordinating or avoiding the priority of the Indebtedness, or the perfection, priority or validity of the Pre-Petition Lenders' or the DIP Lender's Pre-Petition or DIP Facility Liens or imposing, surcharging or assessing against the Pre-Petition Lenders, the DIP Lender or their claims or any Pre-Petition Collateral or DIP Facility Collateral (defined in paragraph 7 below), any fees, costs or expenses, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise;

(11) the board(s) of either of the Debtors are reconstituted without prior notice and consent of the DIP Lender;

(12) subject to the Court's calendar, the failure of the Debtors to obtain an order from the Court establishing procedures relating to the conducting of an auction in connection with the sale of substantially all of the Debtors' assets ("**Asset Sale**") which procedures are acceptable to the Pre-Petition Lenders and the DIP Lender and permit the Pre-Petition Lenders and the DIP Lender to

3

   credit bid the Pre-Petition Indebtedness and the DIP Indebtedness without condition (the "**Asset Sale Procedures**") by May 12, 2010 (or such later date as the DIP Lender shall agree in writing);

(13)  if the Debtors have not entered into an agreement for the Asset Sale on terms and conditions which are acceptable to the DIP Lender by May 24, 2010 (or such later date as the DIP Lender shall agree in writing;

(14)  subject to the Court's calendar, the failure of the Debtors to obtain an order from the Court approving the Asset Sale in a form acceptable to the Pre-Petition Lenders and the DIP Lender (the "**Sale Order**") by June 24, 2010 (or such later date as the DIP Lender shall agree in writing);

(15)  if the Asset Sale acceptable to the Pre-Petition Lenders and the DIP Lender has not closed by July 9, 2010 (or such later date as the DIP Lender shall agree in writing);

(16)  if the Debtors or CRO do not cooperate in the disclosure of information reasonably requested by the Pre-Petition Lenders, the DIP Lender or by any consultant retained by either the Pre-Petition Lenders or the DIP Lender;

(17)  the Debtors' or CRO's failure to comply with its reporting obligations under paragraph 18 of the Final Financing Order; or

(18)  the resignation or termination of any member of the Debtors' senior management without the DIP Lender's written consent and retention of a replacement acceptable to the DIP Lender, which consent shall not be unreasonably withheld.

 (f) <u>Priority and Liens</u>:  Paragraph 7 of the Final Financing Order provides that, as security for the Post-Petition Financing, the DIP Lender is granted security interests and liens (the "**DIP Facility Liens**") in all currently owned or hereafter acquired property and assets of the Debtors of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, goods, accounts receivable, inventory, cash in advance deposits, general intangibles, goodwill, investment property (including, without limitation, ownership interests in corporations, partnerships, and limited liability companies), deposit accounts, real estate, intellectual property, machinery, leases and leasehold interests, fixtures, equipment, vehicles, trademarks, trade names, licenses, the Pre-Petition Collateral, causes of action, including, actions for preferences, fraudulent conveyances, and other avoidance power claims and any recoveries under §§ 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, other than any such claims or recoveries against or from the Pre-Petition Lenders (collectively,

4

"**Avoidance Actions**"), and, upon entry hereof, actions and recoveries thereon against third parties, tax refund claims, commercial tort claims and insurance proceeds, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing, the "**DIP Facility Collateral**"), subject only to, in the event of the termination of the DIP Facility and the payment of the Carve-Out (as defined in the Final Financing Order):

(1)  Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority senior security interest in and lien upon all property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, as of the Petition Date, is not subject to valid, perfected and non-avoidable liens;

(2)  Pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected security interest in and lien upon all property of the Debtors, including the DIP Facility Collateral, whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected and unavoidable liens in existence as of the Petition Date, which liens are senior to those of the Pre-Petition Lenders under applicable non-bankruptcy law (the "**Permitted Liens**");

(3)  Pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first priority senior priming lien (the "**Priming Liens**") as to the Pre-Petition Lenders on all of the DIP Facility Collateral, and the Pre-Petition Collateral, which shall be senior to all other security interests and liens in property of the Debtors' estate except only Permitted Liens; and

(4)  In addition, except to the extent otherwise expressly set forth in this Final Financing Order, or in a written instrument, agreement or other document executed by the DIP Lender, and subject to Paragraph 24 of this Final Financing Order (i) neither the Pre-Petition Liens nor the DIP Facility Liens shall be subject to subordination to any other liens, security interests or claims under Section 510 of the Bankruptcy Code, or otherwise and (ii) any security interest or lien upon the Pre-Petition Collateral or the DIP Facility Collateral which is avoided or otherwise preserved for the benefit of the Debtors' estate under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the Pre-Petition Liens, the DIP Facility Liens and the Adequate Protection Liens (defined in the Final Financing Order).

(g)  <u>Adequate Protection Liens</u>:  Paragraph 8 of the Final Financing Order provides that, as adequate protection of the Pre-Petition Lenders' interests in the Pre-Petition Collateral, including use of the Cash Collateral, pursuant to §§ 361, 363 and 552(b) of the Bankruptcy Code, the Pre-Petition Lenders are granted valid, binding, enforceable and perfected additional and replacement liens (the "**Adequate Protection Liens**") in all property of the Debtors' estate, including the DIP Facility Collateral, the

5

    Avoidance Actions and proceeds thereof to the extent of any decrease in the value of the Pre-Petition Lenders' interests in the Pre-Petition Collateral occurring subsequent to the Petition Date, with such decrease in value to include decreases resulting from the Debtors' use (if any) of Cash Collateral, the depreciation, use, sale, loss, decline in value or market price of the Pre-Petition Collateral, or otherwise.  The Adequate Protection Liens shall enjoy the same validity, priority and extent as the liens the Pre-Petition Lenders held on the Petition Date.  The Adequate Protection Liens are subject only to (a) the Permitted Liens; (b) the Carve-Out (as defined in the Final Financing Order); and (c) the DIP Facility Liens.

(h)    <u>Consent to the Use of Cash Collateral</u>:  Paragraph 3 of the Final Financing Order provides that, solely in compliance therewith and subject further to the terms and conditions of the Final Financing Order and the DIP Loan Documents, the Pre-Petition Lenders consent to the Debtors' limited use of Cash Collateral.

(i)    <u>Carve-Out.</u>  Paragraph 15 of the Final Financing Order provides for a Carve-Out for all allowed fees and expenses of the professionals of the Debtors and any Committee incurred prior to a Termination Event, and a limited Carve-Out thereafter, on the terms and conditions set forth therein.

(j)    <u>Approved Budget</u>:  Attached to the Final Financing Order is a budget (which has been approved by the DIP Lender) setting forth by line item all projected cash receipts, sales and cash disbursements for the time period from April 22, 2010, through _____, 2010 (the "**Initial Approved Budget**").  The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the Pre-Petition Lenders and the DIP Lender agree in their sole discretion (each such additional budget, a "**Supplemental Approved Budget**"), so long as such modification or supplement does not alter the amount of the Professional Fee Expenses set forth on any Approved Budget without the consent of the Debtor Professionals and Committee Professionals.  The aggregate of all items approved by the DIP Lender and the Pre-Petition Lenders in the Initial Approved Budget and any and all Supplemental Approved Budget (acceptable to the Pre-Petition Lenders and the DIP Lender in their sole discretion) shall constitute an "Approved Budget."

(k)    <u>Maximum Borrowing Available</u>:  **The Maximum Borrowing will be set forth in the Approved Budget.**

(l)    <u>Borrowing Conditions</u>:  Paragraph 17 of the Final Financing Order provides that the Debtors' disbursements (other than for the Carve-Out) shall not exceed those set forth in the Approved Budget, in all cases subject to the Approved Sales Variance, the Approved Cash Receipts Variance, and the Approved Disbursements Variance (all as defined in the Final Financing Order).  Notwithstanding the foregoing, and subject to the

Carve-Out, the DIP Lender shall have no obligation to provide the DIP Facility if the Debtors exceed the disbursement amounts provided in an Approved Budget.

(m) <u>Use of Funds Limitations</u>: The Post-Petition Financing and Cash Collateral may be used for working capital and to pay the Carve-Out.

(n) <u>Cross-Collateralization</u>: Paragraph 8 of the Final Financing Order provides the Pre-Petition Lenders liens on certain post-petition collateral of the Debtors, but solely as replacement liens as adequate protection for the use by the Debtors of the Pre-Petition Collateral, including the use Cash Collateral, under the Final Financing Order.

(o) <u>Findings of Fact Regarding Validity, Perfection or Amount of Secured Creditor's Pre-petition Lien</u>: Subject to the reservation of rights for the Debtors and other parties contained in Paragraph 24 of the Final Financing Order, Paragraphs E, F, and G of the Final Financing Order contain findings regarding the validity, perfection, and amount of the liens of the Pre-Petition Lenders.

(p) <u>506(c) Waiver</u>: Effective upon entry of the Final Financing Order, the Debtors will irrevocably waive their right to seek a surcharge of the DIP Facility Collateral or the Pre-Petition Collateral under § 506(c) of the Bankruptcy Code

(q) <u>Avoidance Actions</u>: Effective upon entry of the Final Financing Order and subject to the reservation of rights for the Debtors and other parties contained in Paragraph 24 of the Final Financing Order, Paragraph 7 of the Final Financing Order grants the DIP Lender a lien on actions for preferences, fraudulent conveyances, and other avoidance power claims and any recoveries under §§ 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, other than any such claims or recoveries against or from the Pre-Petition Lenders.

(r) <u>Provisions that Deem Pre-Petition Secured Debt to be Post-Petition debt</u>: The Final Financing Order does not contain any provisions that deem prepetition secured debt to be postpetition debt.

(s) <u>Provisions treating Committee professionals differently than Debtors' professionals</u>: The Final Financing Order does not contain any provisions that treat Committee professionals differently than Debtors' professionals.

(t) <u>Provisions that Prime a Secured Lien Without Lienor Consent</u>: Subject to the reservation of rights for the Debtors and other parties contained in Paragraph 24 of the Final Financing Order, Paragraph 7 of the Final Financing Order grants the DIP Lender liens on all of the DIP Facility Collateral with priority over all other liens and claims, other than Permitted Liens and the Carve-Out.

7

    (u)    <u>Provisions that Grant Lender Expedited Relief from the Automatic Stay:</u> Paragraph 14 of the Final Financing Order provides:

        (a)    Except as set forth in subparagraph (b) of this paragraph 14, which governs any action of the Pre-Petition Lenders and/or the DIP Lender, as applicable, to foreclose on their liens on any Pre-Petition Collateral or DIP Facility Collateral or to exercise any other default-related remedies (other than those specifically referenced in the Final Financing Order), the automatic stay pursuant to § 362 of the Bankruptcy Code is vacated as to the Pre-Petition Lenders and DIP Lender to permit them to perform in accordance with, and exercise, enjoy and enforce their rights, benefits, privileges and remedies pursuant to the Final Financing Order and the DIP Loan Documents without further application or motion to, or order from, the Court, and regardless of any change in circumstances (whether or not foreseeable), and neither Section 105 of the Bankruptcy Code, nor any other provision of the Bankruptcy Code, nor any other law, shall be utilized to prohibit the Pre-Petition Lenders or the DIP Lender from the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies. The Pre-Petition Lenders and the DIP Lender are granted leave to receive and apply payments to the Indebtedness from collections on and proceeds of the Pre-Petition Collateral and the DIP Facility Collateral in the manner specified in the Final Financing Order and the DIP Loan Documents. In addition, the Pre-Petition Lenders and the DIP Lender are, as their interests may appear, granted leave to, among other things, to (i) file or record any financing statements, mortgages or other instruments or other documents to evidence the Adequate Protection Liens or the DIP Facility Liens, (ii) to charge and collect any interest, fees (including reasonable attorneys' fees), costs, and expenses and other amounts accruing at any time under the DIP Loan Documents (other than the Overadvance Fees or the Default Payments, without waiving the rights of the Pre-Petition Lenders to subsequently recover thereupon) or the Final Financing Order as provided therein, (iii) to give the Debtors any notice provided for in any of the DIP Loan Documents or the Final Financing Order, and (iv) upon the occurrence of a Termination Event, and without application or motion to, or order from the Court or any other court, (x) terminate the DIP Facility and the DIP Loan Documents, (y) declare all Indebtedness immediately due and payable, and (z) revoke the Debtors' rights, if any, under the Final Financing Order and/or the other DIP Loan Documents to use Cash Collateral.

        (b)    Upon the occurrence of a Termination Event or on any Termination Date, the Pre-Petition Lenders and/or the DIP Lender, as the case may be, may request an expedited hearing (the "**Stay Relief Notice Period**"), subject to the Court's availability, on

8

notice to the Debtors, counsel to the Debtors, counsel to the CRO, the Committee (if one is appointed or, alternatively, to the twenty (20) largest unsecured creditors) and the U.S. Trustee, for a determination, subject to subparagraph (c) of this paragraph 14, on a motion to be filed by the Pre-Petition Lenders and/or the DIP Lender (a "**Termination Date Stay Relief Motion**") as to whether the Pre-Petition Lenders and/or the DIP Lender shall be granted an order providing that the automatic stay under § 362 of the Bankruptcy Code shall be vacated and modified with respect to the Pre-Petition Lenders and/or the DIP Lender for the purpose of exercising all of their rights and remedies under the Pre-Petition Loan Documents, the DIP Loan Documents, the Final Financing Order or applicable law, including foreclosing or otherwise enforcing their liens on any or all of the Pre-Petition Collateral and the DIP Facility Collateral, or to take any and all actions and remedies which they deem appropriate to effectuate these rights and remedies. Notwithstanding anything in this subparagraph to the contrary, the Debtors, the CRO and/or the Committee shall be entitled to seek a hearing prior to the expiration of the Stay Relief Notice Period, and the Pre-Petition Lenders and/or the DIP Lender, as the case may be, shall be entitled to an immediate hearing in the event that either or both alleges fraud or other imminent danger to any of the Pre-Petition Collateral or the DIP Facility Collateral.

(c)  Unless the Debtors, the CRO, the Committee, the U.S. Trustee and/or any other party in interest have filed an objection to any Termination Date Stay Relief Motion with the Court and served same upon the Pre-Petition Lenders and the DIP Lender within the Stay Relief Notice Period, the Pre-Petition Lenders and/or the DIP Lender, as applicable, shall be entitled to file a certificate that no objection to a Termination Date Stay Relief Motion was filed and the Court may enter an order granting the relief requested in a Termination Date Stay Relief Motion without a hearing. The Debtors, the CRO, the Committee or the U.S. Trustee, as the case may be, shall have the burden of proof at any hearing with respect to a Termination Date Stay Relief Motion and the only issue that may be raised or addressed at such hearing or in connection with a Termination Date Stay Relief Motion is whether a Termination Event or the Termination Date, as applicable, has occurred. Subject to the Debtors' rights in the foregoing sentence, the Debtors and the CRO shall cooperate with the Pre-Petition Lenders and/or the DIP Lender in connection with any enforcement action by such parties by, among other things, (i) providing access to their premises to representatives of the Pre-Petition Lenders and/or the DIP Lender, (ii) providing the Pre-Petition Lenders and/or the DIP Lender or its designees access to the Debtors' books and records, (iii) performing all other obligations set forth in the Final Financing Order, the Pre-Petition

Loan Documents and/or the DIP Loan Documents, and (iv) taking reasonable steps to safeguard and protect the Pre-Petition Collateral and the DIP Facility Collateral until the Pre-Petition Lenders and/or the DIP Lender can make adequate provision to protect and safeguard the Pre-Petition Collateral and the DIP Facility Collateral, and neither the Debtors nor the CRO shall otherwise interfere or encourage others to interfere with any and all of the Pre-Petition Lenders' and/or the DIP Lender's rights.

(v)   <u>Provisions for Joint and Several Liability on Loans</u>:  The DIP Loan Documents provide, consistent with the Pre-Petition Loan Documents, that each Debtor will be jointly and severally liable for the Post-Petition Financing.

**PLEASE TAKE FURTHER NOTICE** that, as set forth above, Local Rule 4001-2(A)(2)-(3) requires that certain provisions contained in the financing documents and/or Final Financing Order be highlighted and that the Debtors must provide justification for the inclusion of such provisions.  The Debtors believe that such provisions are justified and necessary in the context and circumstances of these cases.  Indeed, the Debtors have an immediate need to obtain the Post-Petition Financing and use the Cash Collateral to ensure, *inter alia*, that the Debtors have sufficient working capital and liquidity and can preserve and maintain the going concern value of the Debtors' estates.  In addition, the provisions highlighted above are required by the DIP Lender to obtain the Post-Petition Financing and accomplish these goals.  Accordingly, the Debtors believe that the aforementioned circumstances demonstrate that such extraordinary relief is necessary and appropriate and should be authorized and approved under Local Rule 4001-2.  The Debtors intend to present any necessary argument and evidence to support these assertions at the hearing on the Final Financing Motion scheduled for May 21, 2010, at 11:30 a.m.

Dated: Chicago, Illinois
       May 5, 2010

By:   */s/ Nancy A. Peterman*
Nancy A. Peterman, ARDC No. 6208120
Sean W. Bezark, ARDC No. 6203767
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Phone: 312.456.8400
Fax: 312.456.8435
petermann@gtlaw.com
bezarks@gtlaw.com

*Proposed counsel to the Debtors and Debtors-In-Possession*

## CERTIFICATE OF SERVICE

I, Nancy A. Peterman, an attorney, hereby certify that on May 5, 2010 I caused a complete and accurate copy of the proposed ***Final Order Authorizing (A) Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364(c) and (d); (B) Granting Security Interests, Superpriority Claims and Adequate Protection; and (C) Use of Cash Collateral*** to be served via this Court's ECF notification system and first class, postage paid U.S. mail, as indicated, upon the parties identified on the Service Lists below my electronic signature.

                                                */s/ Nancy A. Peterman*

**ECF NOTICE LIST**

Ernesto D Borges on behalf of Debtor PPM Technologies Holding, Inc.
aferreria@billbusters.com, BillBusters@BestClientInc.com

Michael M. Eidelman on behalf of Creditor Shearer's Foods, Inc
meidelman@vedderprice.com, ecf-docket@vedderprice.com

Glenda J Gray on behalf of Stockholder Leroy Wright - ladylawgray@aol.com

John K Lyons on behalf of Interested Party Calliope Capital Corporation
jlyonsch@skadden.com, mmirkovi@skadden.com

Michael L Molinaro on behalf of Creditor Aurora Management Partners, Inc.
mmolinaro@loeb.com, chdocket@loeb.com;mjawor@loeb.com

William T Neary and Gretchen Silver Region11.ES.ECF@usdoj.gov

Nancy A Peterman on behalf of Debtor PPM Technologies Holding, Inc.
petermann@gtlaw.com, carlsonk@gtlaw.com;greenbergc@gtlaw.com

Karen J Porter on behalf of Debtor PPM Technologies Holding, Inc.
kjplawnet@aol.com, kjplawnet@aol.com

William W Thorsness on behalf of Creditor Shearer's Foods, Inc
wthorsness@vedderprice.com

## SERVICE LIST
## U.S. MAIL MAY 5, 2010

Stuart Komrower, Esq.
Cole Schotz, Meisel, Forman & Leonard, P.A.
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Phone: 201-489-3000
Fax: 201-489-1536
skomrower@coleschotz.com

David M. Bass, Esq.
Cole Schotz, Meisel, Forman & Leonard, P.A.
900 Third Avenue, 16th Floor
New York, New York 10022-4728
Phone: 212-752-8000
Fax: 212-752-8393

Jean R. Robertson, Esq.
Tiiara Patton, Esq.
Calfee, Halter & Griswold LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, OH 44114
Phone: 216-622-8400
Fax: 216-241-0816
jrobertson@calfee.com
*Counsel for Shearer Foods*

PPM Lender Group
c/o Brune & Richard, LLP
80 Broad Street, 30th Floor
New York, New York 10004
Phone: 212-668–1900 phone
Fax: 212-668–0315

Arira Pangindo
Jl Sukaraja 51
Ciluar Bogor 16710
Phone: +62-0251-7127261
Fax: +62-0251-658377

FMC Technologies, Inc - Tupelo
Material Handling Solutions
2730 Highway 145 South
Saltillo, MS 38866
Phone: 662-869-7424
Fax: 662-869-7493
mhsol.info@fmcti.com

IEA Inc
c/o Town Center Bank
10735 NE Halsey
Portland, OR 97220
Phone: 503-542-3720
Fax: 503-542-3724

IMCO Inc
15812 N.E. 10th Street
Ridgefield, WA 98642

Infor Global Solutions
World Headquarters
13560 Morris Road, Suite 4100
Alpharetta, GA 30004
Phone: 678-319-8000
Fax: 678-319-8370
sales@infor.com

Ishida Co Ltd.
1-5201 Itbashi, Itabashi-Ku
Tokyo 1730004
Phone: +81-75-771-4141
Fax: +81-75-751-1634

Jerry Allen Rich
15569 Village Park Court
Lake Oswego, OR 97034

Kerry Sweet Ingredients
400 Prairie Village Drive
New Century, KS 66031-1123
Phone: 913-780-1720
Fax: 913-780-1720

Kuehne & Nagel, Inc
5353 W. Imperial Highway
Los Angeles, CA 90045-6243
Phone: 310-641-5500
Fax: 310-645-2320

Motion Industries, fka
Mill Supply Corp.
2375 Mcgilchrist St. SE
Salem, OR 97309
Phone: 503-585-7411
Fax: 503-581-4894

Pepsico Financial Shared Services
7701 Legacy Drive
Plano, TX 75024-4099
Frito lay Legal Department:
Phone: 972-334-7000
Fax: 972-334-5965

Pepsi-QTG Canada
7701 Legacy Drive
Plano, TX 75024-4099
Frito lay Legal Department:
Phone: 972-334-7000
Fax: 972-334-5965

Seneca Foods Corp
Green Giant Division
101 W 8th Street
Glencoe, MN 55336
Phone: 315-926-8100
Fax: 315-926-8300

Snack Alliance
78035 @ Hwy 207
Buttercreek Hwy (Hwy207)
Hermiston, OR 97838
Phone: 800-665-3880
Fax: 604-654-8448

Sunshine Produce
No 18 Wei 7 Road
Micro Electronics Industrial Park Jingang
Xiqing District Tianjin 300385
Phone: 0086 22 2801 5122
Fax: 0086 22 2328 8022 or 0086 22 2328 5599
info@sunshineproduce.com

The Selinsky Force, LLC
Attn: Marcia
4244 Mt. Pleasant, Ste. 100
N. Canton, OH  44720
Phone: 330-477-4527
Fax: 330-580-2337

Tooh Dineh Industries Inc
PO Box 62434
Phoenix, AZ 85082-2434
Phone: 928-686-6477
Fax: 928-686-6516